**STATE**

**v.**

**Juan UCERO.**

**No. 81–367–C.A.**

Supreme Court of Rhode Island.

Aug. 3, 1982.

Reargument Denied Sept. 30, 1982.

Dennis J. Roberts, II, Atty. Gen., Judith Crowell, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

MURRAY, Justice.

On December 7, 1979, a Providence County Grand Jury indicted the defendant Juan Ucero. The indictment charged the defendant with five counts of first-degree sexual assault, three counts of second-degree sexual assault, and three counts of abominable and detestable crimes against nature. The charges arise out of two separate incidents involving two sisters: Diana, eleven years old at that time, and Roxanna, eight years old at that time. The first incident occurred on August 20, 1979, and involved sexual attacks on both sisters by the defendant, who at that time was sixty years old. The second incident occurred on August 30, 1979, and involved only Roxanna.

On November 10, 1980, the case was brought to trial before a justice of the Superior Court sitting with a jury. At the close of the evidence, the trial justice granted defendant's motion for judgment of acquittal in regard to five of the counts. The remaining counts were submitted to the jury. The jury returned guilty verdicts on all but one of the remaining counts. The jury found defendant guilty of two counts of first-degree sexual assault, two counts of second-degree sexual assault, and one count of the lesser included offense of assault with intent to commit first-degree sexual assault.

On November 26, 1980, the trial justice denied defendant's motion for a new trial. Subsequently, the trial justice imposed a twenty-year sentence for each count of first-degree sexual assault as well as for the lesser included offense of assault with intent to commit first-degree sexual assault. In regard to the second-degree-sexual-assault counts, the trial justice imposed a sentence of five years for each count. At the time of the jury verdict defendant's bail had been revoked, and he has remained incarcerated while we consider his appeal from such conviction.

Both Diana and Roxanna were involved in the August 20, 1979 incident. Evidently, the children's mother and father were out of the house at the time of the incident. They were only a short distance from home, working at the store that they owned. The defendant had been performing various tasks around the house during late summer and early fall of 1979. While working at the house on the day in question, defendant asked Diana to show him where a certain ladder could be located. As Diana took him through the basement, they passed a room containing two beds. Diana testified that defendant then forced her into the room, locked the door behind them, threw her onto one of the beds, removed her clothes, and tied her arms and feet to the bed with a clothesline. In response to defendant's actions, Diana stated that she tried to bite him and began to scream. Diana's screams evidently roused the attention of Roxanna, who after entering the basement began knocking on the door of the room where her older sister and defendant were located. According to Diana, defendant then got off the bed, unlocked the door, allowed Roxanna to enter, and bolted the door shut behind her.

Diana, on direct examination, explained that defendant proceeded to remove Roxanna's clothes and to tie her sister to the other bed in the same manner that he had used to restrain her. According to Diana's version, defendant then proceeded to remove his own clothes. Diana's testimony then detailed the various sexual acts defendant performed upon the two girls. She stated that the girls' continued screams brought an even younger sister to the door of the room. The younger sister began knocking on the door, which action caused defendant to untie the girls and to order them to

dress. Before he released the sisters, defendant evidently warned the girls not to tell anyone about the events that had occurred.

Roxanna also took the witness stand. She told a story similar to the one told by Diana, except that her version had the girls' mother entering the room and demanding that defendant untie the victims. Rosa, the mother, while on the witness stand, was asked about Roxanna's version of the girls' rescue. In response, the mother specifically denied seeing her daughters tied up or telling defendant to untie them. According to the mother, she learned of the incidents of sexual assault in October when an aunt visiting from New York told her what had happened. Diana's version of the mother's learning of the incident has the aunt being told of the events by Roxanna and then relaying the information to the mother.

In regard to the August 30, 1979 incident, there was little evidence introduced and much of it was confusing. In fact, the trial justice entered a judgment of acquittal on the four counts relating to the incident occurring on that date. It is sufficient to state for our purposes that the record reveals that the alleged activity took place in an area of the basement where a boiler was located and that it involved Roxanna and defendant.

After the mother and two daughters had testified, the state began presenting medical testimony. Two physicians from Women and Infants Hospital were called. Doctor Myles Dotto testified to the fact that on November 1, 1979, he was able to examine Diana but was unable to examine Roxanna because of her apprehension. He also explained that he had taken a medical history from Diana which revealed that she had been sexually assaulted over a period of months by defendant. The doctor also revealed the findings of Diana's gynecological examination. He explained that he had attempted to take a medical history from Roxanna as well but that she had not proved to be "a very good historian." Doctor Thomas A. Murray III was also called as a witness for the state. He explained that

on October 31, 1979, he had occasion to take a medical history from Diana. The doctor then detailed the series of sexual assaults about which he had been made aware when taking the history.

In addition to the medical testimony of the doctors, the state attempted to introduce as full exhibits the medical records from Women and Infants Hospital relating to the diagnosis and treatment of Diana and Roxanna. Defense counsel duly objected. The trial justice, evidently realizing that there may have been a problem with the admissibility of the records and attempting to expedite the trial, allowed the exhibits to be admitted in full with the understanding that they "would not be shown to the jury at the present time." The trial justice stated that he would consider removing any portion of the exhibit before the jury took the records into deliberations. During the course of the trial, defense counsel again raised the issue of the admissibility of the medical records. The trial justice, as promised, reviewed the exhibit and removed a number of pages therefrom.

As part of its case the defense presented Joaquin Vela, a general contractor who had employed defendant. He testified that defendant had worked for him for a period of fifteen days during the month of August. According to the witness, the period was from August 15 to August 30, 1979.

The defense also attempted to present Harold Gomes as a witness. His proposed testimony would have indicated that defendant worked for him during the month of October 1979. The trial justice refused to allow him to testify.

In support of his appeal defendant raises six arguments; we shall consider each in the order in which they have been raised. Any additional facts necessary to the resolution of the issues will be discussed in the remainder of the opinion.

■ Initially, we consider defendant's contention that the state is not entitled to exercise peremptory challenges without restriction. In particular, defendant argues

that the state, by using peremptory challenges to exclude three male jurors, had violated his right to have a jury chosen from a fair cross section of the community.

Recently, in *State v. Raymond,* 446 A.2d 743 (R.I., 1982), we rejected a similar argument involving the state's use of peremptory challenges to exclude three young women from a jury. In that case we noted the virtual impossibility of a defendant's showing that the state's use of peremptory challenges has caused the systematic underrepresentation of a particular group. *Id.* at 745 (citing *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). Also, in *Raymond* we specifically refused to adopt two cases relied upon by defendant here. *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979).

In the present case, defendant specifically noted for the record his objection to the state's use of peremptory challenges to exclude the men. No statistical data was provided to the trial court in an attempt to make the requisite showing. Evidently counsel for defendant took the position that the state simply could not use its peremptory challenges to exclude men. Obviously this was not an adequate showing. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

The defendant next argues that the trial justice erred in excluding the public from his trial during a portion of Diana's testimony. The defendant contends that this exclusion order violated his right to a public trial.

The record reveals that Diana, aged twelve at the time she testified, began to relate the occurrences of August 20, 1979, in an open courtroom. When Diana reached the point where defendant had tied her to the bed, she was unable to continue her explanation of what had happened thereafter. The trial justice, after allowing the prosecutor an opportunity to ask a couple of leading questions, inquired whether Diana would "be able to tell us more if there were not so many people" present. When Diana responded in the affirmative, the trial justice requested that all spectators leave the courtroom. Defense counsel objected to the closing of the courtroom. The trial justice, after noting that the child was crying and trying to recall events of a distasteful nature, stated that it was only proper to allow the child to relate the incident without the presence of curious bystanders. The trial justice also gave defendant an opportunity to have any member of his family excepted from the exclusion order. The defendant did not avail himself of the offered accommodation.

■ A trial justice has discretion to close a courtroom when exclusion is "necessary to protect a witness from the embarrassment or emotional pressures that often result when a victim must relate the details of a lurid crime in open court." *State v. Santos,* R.I., 413 A.2d 58, 63 (1980). An exclusion order may be necessary "when, because the witness is young, emotionally upset, or the victim of a sex crime, he cannot bring himself to testify in open court." *Id.*

■ The record in the present case reveals that Diana was unable to relate the details of the August 20, 1979 incident any further. In fact, the situation that led to exclusion in the present case went beyond the facts found in *Santos.* In *Santos* we upheld a trial justice's order of exclusion for the whole of a victim's testimony, even though the complaining witness was ten years older than Diana and had not broken down while testifying. *Id.* 413 A.2d at 63–64. In conclusion, the trial justice acted properly by closing the courtroom for the remaining portion of Diana's testimony after she had broken down while testifying and could not further relate the events of the August 20, 1979 incident.

We next consider defendant's contention that the trial justice acted improperly in denying his request that the trial be continued until a tape of Diana's testimony before the grand jury could be made available.

■ A motion for a continuance is addressed to the sound discretion of the trial

justice, and his decision thereon will not be disturbed on appeal absent an abuse of discretion. *State v. Allan,* R.I., 433 A.2d 222, 225 (1981); *State v. Leonardo,* 119 R.I. 7, 11, 375 A.2d 1388, 1390 (1977). In reviewing the denial of a motion for a continuance, we shall look to the circumstances of each case to determine whether or not an abuse of discretion has taken place. *Id.*

As part of his pretrial discovery, defense counsel requested that the state furnish all recorded grand-jury testimony taken from witnesses the State expected to call. The state's answer specifically stated that defense counsel should contact the prosecutor to make an appointment to listen to the tapes. Defense counsel never contacted the prosecutor prior to trial to arrange such an appointment. At trial, in response to certain testimony given by Diana, defense counsel made a motion for a continuance until the time when he could listen to the grand-jury tape of her testimony. Evidently, the prosecutor because of a backlog problem, did not have the tape readily available. The trial justice denied the request for a continuance but stated that he would allow defense counsel an opportunity to recall Diana and to further cross-examine her after counsel had heard the tape. As the trial continued, defense counsel never requested that Diana retake the witness stand.

█ Considering the circumstances of the instant case, we are of the opinion that the trial justice did not abuse his discretion in allowing the case to proceed. It is clear that defendant did not exercise due diligence in attempting to secure the tapes because he never contacted the prosecutor to arrange an appointment to hear such tapes. *See State v. Carillo,* 113 R.I. 32, 40, 317 A.2d 449, 454 (1974). Also, it is equally clear that the trial justice acted reasonably in light of the lack of diligence on the part of defendant in giving him an opportunity to recall and to further cross-examine Diana after he had heard the tapes.

The defendant next contends that the trial justice should have granted his motion to pass the case when Roxanna, while testi-

fying, related details of her mother's coming upon the two sisters in the cellar room and ordering defendant to untie them. The defendant considers this to be evidence of a sexual assault distinct from those charged in the indictment. He reasons that the jury was given the impression that defendant was being tried only for some of the crimes he had committed.

The trial justice, after giving serious thought to the motion, refused to pass the case. He pointed to the age of the witness and the fact that defendant would have an opportunity to cross-examine the witness.

█ It is well established in this jurisdiction that a decision on a motion to pass a case lies within the sound discretion of the trial justice. *State v. Anil,* R.I., 417 A.2d 1367, 1372 (1980); *State v. Hoyle,* R.I., 404 A.2d 69, 70 (1979). A trial justice's decision concerning a motion to pass a case is to be accorded great weight and will not be disturbed on appeal unless clearly wrong. *State v. Byrnes,* R.I., 433 A.2d 658, 667 (1981); *State v. Pailin,* 114 R.I. 725, 729, 339 A.2d 253, 255 (1975). The reason we vest such broad power in the trial justice is that he possesses "a 'front-row seat' at the trial and [he] can best determine the effect of the improvident remarks upon the jury." *Id.*

█ In her testimony Roxanna detailed a bizarre scenario in which she and her sister were rescued by her mother. This version directly conflicts with the testimony given by both the mother and Diana. It is clear to the court that Roxanna's testimony did not prejudice defendant's case. In fact, if it had any effect, it was to diminish, if not negate, Roxanna's credibility. The trial justice, evidently realizing the problems with Roxanna's testimony, granted a judgment of acquittal on the counts that were not corroborated by Diana's testimony. In sum, we shall not disturb the trial justice's denial of defendant's motion to pass the case.

The defendant also contends that the trial justice improperly admitted Diana's and Roxanna's medical records. As has been

previously mentioned, the trial justice initially allowed the records to be made a full exhibit. He would not, however, allow the jury to view them until he gave counsel an additional opportunity to present argument concerning which pages of the medical records should be removed. Subsequently, the issue was again brought to the trial justice's attention. The state and defendant had agreed to remove certain pages that had not been furnished to defendant as part of pretrial discovery. Also, defendant argued for removal of certain remaining pages that "do not relate to treatment or diagnosis and which are clearly hearsay from the two complainants in this case." After considering the arguments of counsel, the trial justice decided to remove an additional three pages from the medical records. He left remaining two pages that defendant had attempted to remove.

■■■ Statements made to a medical expert by a patient are often admissible as an exception to the hearsay rule. Admissibility "hinge[s] on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of his ailment." *State v. Contreras,* 105 R.I. 523, 534–35, 253 A.2d 612, 619 (1969). If the declarations are simply a narration of details that have no medical connection to diagnosis or treatment, then the statements do not fall within the exception to the hearsay rule and are therefore inadmissible. *Id.* at 535, 253 A.2d at 619.

■■■ A look at the two pages that the trial justice did not excise from the record and that accompanied the jury into its deliberations reveals copies of barely legible notes written by the doctors. Detailed in such notes are the girls' accounts of the various sexual acts performed by defendant. The purpose of the girls' visit to the hospital was to determine whether or not sexual assault had occurred. In fact, Dr. Dotto testified that in his diagnosis and treatment of patients in this type of case, he relies in part upon the medical history taken from the patient. Clearly, the incidents detailed in the medical records were pertinent to the diagnosis and treatment of

Diana and Roxanna which was being attempted by the doctors at Women and Infants Hospital.

Although the various pages of the medical records consisted of incidents that were pertinent to the girls' diagnosis and treatment, they also contained references to other instances of sexual assault not charged in the indictment. This problem was brought to our attention at our oral argument. Counsel for the state, when questioned about the references to other "occasions" of sexual assault, quickly responded that defendant had not preserved this ground for objection at the trial court level. We agree.

■■■ The record reveals that defense counsel objected to the remaining portion of the exhibit on the ground that it clearly constituted hearsay and did not relate to diagnosis and treatment. He did not state that the exhibit contained other details of sexual assault, nor did he make any other statement that would have alerted the trial justice to the problem. When at trial the introduction of evidence is objected to for a specific reason, other grounds for objection are waived and may not be raised for the first time on appeal. *Smith v. State,* Ind. App., 403 N.E.2d 869, 877 (1980); *Siter v. Maryland Peat & Humus Co.,* 242 Pa.Super.Ct. 184, 187, 363 A.2d 1221, 1223 (1976). In the present case, the trial justice reviewed the exhibit in light of the grounds that had been argued. Considering the grounds raised, he removed three pages. He cannot be required to consider grounds that were not brought to his attention. In conclusion, we are of the opinion that the medical records were properly admitted.

The defendant's last contention is that the trial justice improperly excluded Harold Gomes as a defense witness. The defendant argues that Gomes anticipated testimony, which related to defendant's employment by Gomes in October of 1979, became relevant when the mother of the girls testified that defendant had painted furniture for her during that month. According to defendant, if we consider the mother's testimony as well as the girls' testimony—that they were assaulted on one occasion at a

time when defendant was painting furniture in their home—the whereabouts of defendant during October is relevant.

At trial, after the state had objected to defendant's calling Gomes as a witness, defendant argued that Gomes's testimony was in fact relevant. The trial justice based his decision not to allow Gomes to testify on his behalf that the month of October was not relevant to the issues of the case.

■■■■■ It is well settled in this jurisdiction that questions involving the relevancy of testimony lie within the sound discretion of the trial justice. *State v. Byrnes,* R.I., 433 A.2d at 675; *State v. Verdone,* 114 R.I. 613, 617, 337 A.2d 804, 808 (1975). The trial justice's determination regarding relevancy will not be disturbed unless there has been an abuse of discretion. *State v. Pemental,* R.I., 434 A.2d 932, 937 (1981).

■■■ In the present case, we find no abuse of discretion on the part of the trial justice in refusing to allow Gomes to testify. Initially, we note that the state was not given notice of Gomes's proposed testimony as required by Rule 16 of the Superior Court Rules of Criminal Procedure. In addition, the indictment charged the defendant with crimes that had taken place on August 20, 1979, and August 30, 1979. Judgment of acquittal was granted on all counts relating to the August 30, 1979 incident. In regard to the remaining date, Diana did testify that the defendant was painting furniture on the date of the incident in the basement; she also specifically referred the sexual assault to a few days before her birthday. Since Diana was born on August 24, she was evidently indicating that the assault took place on August 20, 1978. It is obvious to the court that a child will better remember the date of certain events by reference to her birthday than by reference to a workman's tasks. We are in agreement with the trial justice that testimony relating to the defendant's employment during October was not relevant to the ultimate decision before the jury: whether or not the defendant had sexually assaulted Diana and Roxanna on August 20, 1979. The trial justice did not abuse his discretion in refusing to allow Gomes to testify.

For the reasons stated, the appeal of the defendant is denied and dismissed, the judgments of conviction are affirmed, and the case is remanded to the Superior Court.