**STATE**

v.

**Eugene PINA.**

**No. 81–525–C.A.**

Supreme Court of Rhode Island.

Jan. 27, 1983.

---

Dennis J. Roberts, II, Atty. Gen., Judith Crowell, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Appellate Division, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Eugene Pina, was tried and convicted before a jury in the Superior Court on an indictment charging first-degree sexual assault in violation of G.L.1956 (1981 Reenactment) § 11–37–2. The defendant appeals.

At trial, both the complaining witness (Madeline) and defendant testified to the same chronology of events up until the alleged rape. Madeline and defendant went out separately and met a group of their friends at a lounge in Attleboro. The group stayed until the lounge closed, went out to breakfast, and then went to a parking lot to drink and talk. At about 3:30 a.m. Madeline drove two of her friends home. As she left the driveway, defendant got out of his brother's car and asked for a ride home stating that he and his brother had an argument. She agreed and they drove toward defendant's home.

At this point the testimony conflicts. The defendant testified that they drove to a wooded area past his house where Madeline agreed to "mess around." They "made out" for approximately fifteen minutes and then got out of the car and had sexual intercourse on the ground. Afterward Madeline drove defendant home and he promised not to mention the incident to anyone.

Madeline testified that defendant asked her to stop about three houses before his own in the wooded area. She assumed the reason was that defendant did not want his girlfriend to see him leaving her car. When she stopped, however, defendant grabbed the keys and threatened to kill her and throw her into the river if she resisted him. The defendant pulled her from the car and forcibly had sexual intercourse with her. The defendant then returned her keys and directed her to drive him to his house where he got out of the car. Madeline drove home and woke up her boyfriend. Together, they went to the Pawtucket police station.

Officer Piazza testified that after Madeline arrived at the station he took her back to the place where the incident occurred. At the wooded area he observed a matted-down grassy area and a tube of lipstick which Madeline identified as hers. Madeline then went to the Women and Infants Hospital Emergency Room where Dr. Thomas Murray examined her.

At the trial, Dr. Murray testified concerning his examination of Madeline. He was also permitted to testify about the events

leading up to the alleged rape as part of Madeline's medical history. He began by recounting the events that made up the concurring parts of Madeline's and defendant's testimonies. He then proceeded to repeat Madeline's version of the rape. The testimony included defendant's threats to kill Madeline and to throw her in the river. It also included statements that defendant "was horny and interested in sex" and that "he was going to rape her and didn't care what happened to him."

On appeal defendant argued that Dr. Murray's testimony was hearsay and did not fall within the medical-diagnosis exception to the hearsay rule. The defendant also argued that the admission of Dr. Murray's testimony was highly prejudicial. We agree with the above contentions.

■ Doctor Murray's testimony of Madeline's case history consisting of her out-of-court statements is clearly hearsay. *See Martin v. Estrella,* 107 R.I. 247, 257, 266 A.2d 41, 48 (1970). Rhode Island, however, recognizes the medical-diagnosis exception to the hearsay rule. *State v. Contreras,* 105 R.I. 523, 534–35, 253 A.2d 612, 619 (1969); *See* 6 Wigmore, *Evidence* § 1722 at 123–26 (Chadbourn rev. 1976). Generally, statements by an injured person to his treating physician relating to his physical condition and to the cause of such injury are admissible because a person will presumably be truthful to a physician from whom he expects to receive medical attention. *Shell Oil Co. v. Industrial Commission,* 2 Ill.2d 590, 602, 119 N.E.2d 224, 231 (1954).

The *Contreras* court, however, in positing the standard as to the admissibility of such statements, held that the test is not determining merely whether or not the statements are part of a case history. Rather, "admission or rejection will hinge on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of his ailments." *State v. Contreras,* 105 R.I. at 534–35, 253 A.2d at 619. If such statements narrate details not connected with either diagnosis or treatment, they will be inadmissible unless they fall within another hearsay exception. *Id.*

When statements as to causation enter the realm of fixing fault, it is unlikely that the patient or the physician consider them related to diagnosis or treatment. *Sullivan v. United States,* 404 A.2d 153, 159 n. 11 (D.C.App.1979). In the circumstances where fault is an issue, statements of causation do not hold the same reliability of truthfulness and are properly excluded. *Id.; see Cestero v. Ferrara,* 57 N.J. 497, 501, 273 A.2d 761, 763 (1971).

The prosecution relies on *State v. Ucero,* R.I., 450 A.2d 809 (1982) wherein we allowed medical testimony under the medical-diagnosis exception to the hearsay-rule. In *State v. Ucero,* the treating physician testified about various sexual acts performed on the complainant related by her as part of her medical history. *Id.* 450 A.2d at 812. The court, however, held that such statements were clearly related to the diagnosis and treatment of a sexual-assault victim. *Id.* 450 A.2d at 815. Furthermore, the purpose of the hospital visit was to determine whether or not a sexual assault had in fact occurred. *Id.*

■ In contrast, the instant case presents no question as to whether or not sexual intercourse took place. The only issue is whether intercourse was voluntary or involuntary.

Doctor Murray's testimony, although part of a medical history, contains statements which are clearly not pertinent to diagnosis or treatment. The alleged threats by defendant only serve to clarify the issue of consent. The statements merely assign fault and are thus inadmissible hearsay.

We further find that the admission of Dr. Murray's testimony was highly prejudicial to the defendant. A doctor clothed in the garb of a medical expert possesses substantial stature in the eyes of a jury. *See State v. Castore,* R.I., 435 A.2d 321, 326 (1981). The doctor's repetition of the victim's version of events was sure to lend it credibility. A medical expert cannot serve the function of a thirteenth juror by evaluating the credibility of witnesses. *Id.*

Thus the defendant's appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.