STATE

v.

**Maurice BURGESS.**

No. 82–332–C.A.

Supreme Court of Rhode Island.

Sept. 2, 1983.

Dennis J. Roberts, II, Atty. Gen., F. Thomas O'Halloran, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Atty., Paula Rosin, Asst. Public Defender, Providence, for defendant.

## OPINION

SHEA, Justice.

The defendant, Maurice Burgess (Burgess), appeals from Superior Court jury convictions of first- and second-degree sexual assault and committing an abominable and detestable crime against nature. The state concedes that we should vacate the conviction of committing an abominable and detestable crime against nature because this conviction and the first-degree sexual-assault conviction result from the same forcible-fellatio offense, thereby violating the double-jeopardy clause. Burgess also raises a number of other issues; however, the issue concerning the admissibility of Dr. Doreen Neptune's hearsay testimony is dispositive of the appeal. We reverse.

We shall refer to the complaining witness as Marie. She testified that on the evening of January 24, 1981, a man grabbed her from behind and told her "to be nice to him" or else he would kill her. When she turned to face her assailant, he hit her in the head and shoved her to the ground. He beat her and then forced her into a deserted alley near the Union Paper Company, where he ordered her to commit an act of fellatio upon him. Marie was then forced to proceed farther into the alley and thrust onto a discarded cardboard box. A series of sexual assaults followed, the details of which it is not necessary for us to relate here.

After the assault concluded, the assailant told Marie that she was going to make some money for him and that they would return to his apartment. Marie convinced him, however, to go to her house because it was closer. She told him that she had left her

keys at a friend's house and persuaded him to accompany her there. When they arrived, Marie "mouthed the words, 'Please help me. I'm in trouble,'" and then asked her friend if she had her keys. At this point the friend knew something was wrong because she had never been given the keys. On a pretext, the friend was able to get Marie into the bedroom away from Burgess. Once in the bedroom, Marie told her friend that she had been raped and asked her to call the police. Her friend complied, and shortly thereafter the police arrived. They arrested the man who Marie said assaulted her. He was later identified as Burgess.

Thereafter, Marie was taken by the police to the alley in which the assault had occurred. There they found the cardboard box and strands of Marie's hair. The police then took Marie to Women and Infants Hospital.

Doctor Neptune, the examining physician, testified that she observed bruises on both of Marie's breasts and that she found tenderness in the posterior head area and in the abdomen. A rape kit was assembled and samples taken, but the tests revealed no spermatozoa or acid phosphatase.

At trial, Dr. Neptune testified, over objection, that in the course of the doctor's taking a history, Marie related her story. According to Dr. Neptune:

"[Marie] stated that she had visited a girlfriend's home, and as she left there, she was walking down Douglas Avenue and she passed three males standing in front of a liquor store, and shortly thereafter she was grabbed by—from behind. * * * As she passed the El Reno Club, she noticed one male following her from behind. He grabbed her throat and stated, quote unquote, she will be nice to him. He then punched her and knocked her to the ground, stating that she will do what he said. He then pulled and knocked her to the ground stating she will do what he says. He then pulled her up by the hair and led her to a parking lot between—* * *. Anyway, this was a parking lot where he proceeded to undress her and then pull [sic] his pants off and proceeded to have sexual relations with her."

The trial justice allowed Dr. Neptune's hearsay narration of the events because in his view, it was admissible under both the medical-diagnosis and excited utterance exceptions to the hearsay rule.[1]

### Medical History Exception to the Hearsay Rule

■ In *State v. Contreras*, 105 R.I. 523, 253 A.2d 612 (1969), this court held that a statement made by a patient to a physician for the purpose of providing a "case history" is not always admissible. Admission or rejection of such evidence hinges on whether the patient's statements will assist or be helpful in the diagnosis or treatment of the ailment. *Id.* at 534–35, 253 A.2d at 619. These hearsay statements are admissible "because a person will presumably be truthful to a physician from whom he expects to receive medical attention." *State v. Pina*, R.I., 455 A.2d 313, 315 (1983).

■ *State v. Pina*, like the case at bar, involved a sexual-assault allegation. The testimony of the doctor included the defendant's threats to kill the complaining witness and to throw her into the river. "It also included statements that [the] defendant 'was horny and interested in sex' and that 'he was going to rape her and didn't care what happened to him.'" *Id.* 455 A.2d at 315. This court reversed the conviction because the doctor's testimony included hearsay statements that were not pertinent to diagnosis or treatment.

As in *Pina*, the history related by Dr. Neptune's testimony contained statements that were not pertinent to diagnosis or treatment, and therefore were erroneously admitted under the medical-diagnosis ex-

1. Although the trial justice actually stated that the statement "might very well fall within the res gestae exception to the hearsay rule," the more proper term is the excited utterance exception to the hearsay rule.

ception to the hearsay rule. We have stated, "A doctor clothed in the garb of a medical expert possesses substantial stature in the eyes of a jury." *Id.* The narrative history testified to by Dr. Neptune corroborated Marie's testimony; therefore, admission of this testimony was highly prejudicial to Burgess.

### Excited Utterance Exception to the Hearsay Rule

The trial justice also believed that Marie's statements to Dr. Neptune were part of the res gestae, more properly referred to as the spontaneous-utterance exception to the hearsay rule. Under this exception "a spontaneous exclamation may be admitted into evidence even if not strictly contemporaneous with the exciting cause if, from a consideration of all the facts in the case, it appears that the declarant, when he or she spoke, was still laboring under the stress of the nervous excitment engendered by the event he or she describes." *State v. Jalette,* 119 R.I. 614, 619, 382 A.2d 526, 529 (1978). "A spontaneous utterance is really an effusion. Being spontaneous, it is free from the elements of design, contrivance, and self-service * * *." *In re Daniel,* R.I., 456 A.2d 258, 260 (1983).

 Admissibility of a spontaneous utterance is addressed to the sound discretion of the trial justice. *Id.* 456 A.2d at 260. The state has the burden of proving that the statement is spontaneous and was made before the declarant had an opportunity to contrive or misrepresent. *Id.*

In this case, we believe that the state failed to meet its burden. Although, in sexual offense cases there is a less demanding time element than in other cases, the state must still prove that the statement is spontaneous. *See State v. Souza,* R.I., 456 A.2d 775 (1983). Most of the factors taken into consideration to determine whether or not the statement is spontaneous militate against the use of the exception in this case. The assault took place sometime around 11 p.m. The police arrived and arrested Burgess at approximately 12 midnight. Marie told Dr. Neptune what had happened to her at approximately 1:45 a.m. Prior to that, Marie had accompanied the police to the scene and showed them where the assault occurred. Doctor Neptune was at least the fourth person who spoke with her after the incident, and the statements about which she testified had been made after Marie had had time to reflect. Although Dr. Neptune described Marie as appearing "emotionally upset," the mere fact that the declarant is upset does not suffice to establish the necessary foundation for the spontaneous-utterance exception. *See In re Daniel,* 456 A.2d at 261. The statement must be an effusion, and the evidence contained in the record simply is insufficient to demonstrate that Marie's statement was an effusive response to a startling event.

For these reasons, we hold that the trial justice should have excluded Dr. Neptune's hearsay testimony. The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.