STATE

v.

Terril L. VELUZAT.

No. 89–363–C.A.

Supreme Court of Rhode Island.

July 20, 1990.

James E. O'Neill, Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine A. Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before us on the defendant's appeal from his conviction in the Superior Court on one count of first-degree child-molestation sexual assault and one count of second-degree child-molestation sexual assault. We reverse and remand the case to the Superior Court for a new trial. The facts of the case insofar as pertinent to this appeal are as follows.

On June 25, 1986, Florence Miller and her six-year-old daughter appeared at the North Kingstown Police Station. The child told the police that she had been sexually molested by defendant, Terril L. Veluzat, who was a part-time resident in Miller's home. After some questioning of the girl by North Kingstown detectives, she and her mother were transported to Rhode Island Hospital where the girl was examined by a pediatrician, Dr. Raymond Entwistle. Doctor Entwistle performed a general physical examination and a partial pelvic exam and took a medical history. After the examination Dr. Entwistle completed a medical report indicating that he found no obvious signs of sexual penetration or physical abuse. The only apparent abnormality the doctor noted on his report was that the words "kick me" had been scratched into the skin on the child's thigh (which the child claimed her mother had done "as a joke"). However, Dr. Entwistle did note on the report in great detail what the child had told him about the alleged incidents of molestation. Specifically, the doctor noted that the child stated that defendant had touched her and attempted sexual penetration of her "private area." She further stated that defendant had asked her to play "the lollipop game" with him, or to engage in fellatio.

The defendant was subsequently arrested and tried on charges of child molestation, but the trial ended in a mistrial. He was subsequently retried, and Dr. Entwistle's report was admitted into evidence in full under a purported exception to the hearsay rule. The defendant was convicted on both counts and sentenced to a total of forty years imprisonment, with twenty-five years to be served and fifteen years suspended thereafter.

In support of his appeal defendant raises two major issues that we shall address separately.

I

### The Cross–Examination of Florence Miller

■ The defendant asserts in his brief that Florence Miller had her daughter fabricate the allegations of child molestation made against him. Miller's reason for doing this, defendant argues, is to retaliate against him for threats made by defendant's girlfriend, who is also Miller's sister-in-law, that she would notify the authorities that Miller had made false statements on an application she had filed in order to obtain public assistance.[1]

As part of its case in chief, the state called Florence Miller as a witness. She testified about the physical layout of her home, the names and ages of her children (who lived at her house), and the events that occurred on the day she was informed by her child about the alleged molestations by defendant.

On cross-examination defense counsel attempted to question Miller about the threats allegedly made by defendant's girlfriend that she would turn Miller in for welfare fraud. The prosecutor's objection to the questioning was sustained by the trial justice. In sustaining the objection, the trial justice found:

"It's not necessary. It is irrelevant * * *. It's well beyond the scope of direct examination. Any bias this witness might have or might not have towards [defendant's girlfriend] has nothing to do with this defendant * * * ."

■ Effective cross-examination is an essential element of the presentation of a full and fair defense and is guaranteed by both the State and the Federal Constitutions. *State v. Brennan*, 526 A.2d 483, 488 (R.I.1987) (citing *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965)). Additionally the cross-examiner must be given a reasonable opportunity to explore and to establish any possible bias, prejudice, or ulterior motive that a

---

1. At defendant's first trial, which ended in a mistrial, the trial justice obtained the application for public assistance that Miller had filed. After examining the application in camera, the trial justice provided defense counsel a portion of the application and placed the remainder under seal. At defendant's second trial, the trial justice did not make the documents placed under seal available to defense counsel.

witness may possess that might affect the witness' testimony. *Id.* However, the scope of cross-examination, even for the purpose of exposing bias, is not unlimited. Limiting the extent and scope of cross-examination is within the sound discretion of the trial justice, and any such ruling by a trial justice will be left undisturbed by this court absent a showing of a clear abuse of that discretion. *State v. Benevides,* 420 A.2d 65, 69 (R.I.1980); *State v. Bennett,* 122 R.I. 276, 278, 405 A.2d 1181, 1183 (1979); *State v. Mattatall,* 114 R.I. 568, 572, 337 A.2d 229, 232 (1975). In addition evidence that is irrelevant can always be excluded by the trial justice, even if it purports to show bias. *State v. Edwards,* 478 A.2d 972, 975 (R.I.1984). We agree with the trial justice in finding that the issue of Miller's harboring a grudge against defendant's girlfriend is so tenuously related, if at all, to the issue of her possible bias against defendant that the trial justice committed no error by excluding this line of questioning.

■ At a later point during cross-examination, defense counsel sought to impeach Miller's credibility by showing that a statement she made during direct examination was inconsistent with a statement she had made on her application for public assistance. Specifically, in her application she stated that her nephew lived in her home, and on direct examination she said that he did not. During an offer of proof defense counsel stated that he wanted to use this prior inconsistent statement for the purpose of impeaching Miller's "ability to tell the truth; testify to the truth." The trial justice rejected this offer of proof, and this line of questioning was not allowed.

In *State v. Cianci,* 430 A.2d 756, 762 (R.I.1981), we held:

"When a party seeks to introduce a prior inconsistent statement, the trial justice in the first instance must determine whether a statement is in fact inconsistent with the witness's testimony * * * *and whether the inconsistency is in any way material to the issues involved in the case.*" (Emphasis added.)

It may be true that Miller's testimony on direct examination was inconsistent with a statement she made in her application for public assistance. We must agree with the trial justice, however, in his conclusion that this inconsistency was not material to any issue in this case. The facts to which Miller testified on direct examination were essentially neutral statements of historical fact. Miller's testimony did not raise any subject matter in regard to which her credibility could conceivably be at issue. We further conclude that raising the issue of whether Miller had made misstatements in her application for public assistance would serve only to harass or humiliate her and probably would not have assisted the jury in according weight to her testimony. We thus hold that the trial justice did not abuse his discretion by refusing to allow defense counsel to use this prior inconsistent statement.

II

The Admission of the Doctor's Report

■ After the physical examination of the child Dr. Entwistle reported his findings in a form supplied by the Department For Children and Their Families pursuant to Rhode Island law. G.L.1956 (1984 Reenactment) § 40–11–6, as amended by P.L. 1985, ch. 371, § 1. At trial the prosecution called Dr. Entwistle to the stand to testify about the examination he performed upon the child. Although the doctor was able to recall some general facts surrounding the event, he indicated that his memory was exhausted concerning his specific observations and findings. Then, in an attempt to refresh the doctor's recollection, the prosecutor showed him a copy of the report he had made after the examination. Apparently this did not refresh the doctor's present recollection of the specifics of the examination.

A conference was then held in-chambers with the trial justice and both counsel present, and a discussion ensued regarding how this medical report would be used. The prosecutor then informed the trial justice that he intended to lay the appropriate foundation and introduce the medical re-

port under Rule 803(5) of the Rhode Island Rules of Evidence, the hearsay exception for past recollection recorded. This prompted an objection by defense counsel, who argued that the report contained highly prejudicial hearsay that was not admissible under any hearsay exception. Additionally defense counsel argued that this court's holding in *State v. Pina*, 455 A.2d 313 (R.I.1983), addressed the same situation and found this type of evidence to be inadmissible. This objection was overruled by the trial justice, and the medical report was eventually admitted in full as past recollection recorded under Rule 803(5).

We conclude, however, that this medical report should not have been admitted into evidence under any hearsay exception. The document clearly does not satisfy the requirements necessary to qualify it as a memorandum of past recollection recorded. That hearsay exception has a threshold requirement that the person who prepared the memorandum must have based the perceptions recorded in the memorandum upon his personal observations and not upon what others have told him. *See Mercurio v. Fascitelli*, 116 R.I. 237, 354 A.2d 736 (1976). In this case the report included numerous highly prejudicial statements made by the child to Dr. Entwistle concerning events of which he had absolutely no personal knowledge. Thus, in admitting this document under Rule 803(5), the trial justice, we believe, committed reversible error.

■ Although the state did not attempt to admit this document under Rule 803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment, we shall address the rule's applicability to this case due to the fact that defense counsel raised the issue in objecting to the admissibility of the medical report. In *Pina, supra,* we held that a doctor's testimony concerning the account of specific events surrounding the rape related to him by a rape victim was not admissible under Rule 803(4). In *Pina,* the doctor testified not only about the factual events leading up to the rape but also concerning threats made by the perpetrator to the victim, all

of which had been told to the examining physician by the victim. The doctor had no firsthand knowledge of any of this information. Clearly any statements made by a victim concerning what sexual acts had occurred would be admissible hearsay insofar as they would be related to the diagnosis and treatment of a sexual-assault victim. *See State v. Ucero*, 450 A.2d 809 (R.I.1982). However, when the statements made are merely to assign fault or to narrate details that are not connected with diagnosis or treatment, they are inadmissible hearsay if they do not fall within any other hearsay exception. *State v. Contreras*, 105 R.I. 523, 534–35, 253 A.2d 612, 619 (1969). The test this court has used in determining the admissibility of such statements was enunciated in *Contreras:*

> "[A]dmission or rejection will hinge on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of his ailment." *Id.*

In the present case the report contained a statement made by the child that identified her alleged attacker and a further statement that the child had been asked to commit sexual acts that were never in fact perpetrated. Such statements, we must conclude, do not in any way assist a physician in the diagnosis and treatment of a sexual-assault victim and as such are not within the scope of the Rule 803(4) hearsay exception.

Additionally we must recognize the significant prejudicial effect that the admission of this report may have had upon the jury. We have often recognized that a physician's testimony can carry with it an impression of great credibility. In this case the only witness to the alleged molestations was a child who was six years old when the incidents were alleged to have occurred. The documentation by a physician of the child's descriptions of the attacks could potentially have given these statements heightened credibility. As we stated in *Pina*, 455 A.2d at 315:

> "[T]he doctor's repetition of the victim's version of events was sure to lend it credibility. A medical expert cannot serve the function of a thirteenth juror

by evaluating the credibility of witnesses." (Citing *State v. Castore*, 435 A.2d 321, 326 (R.I.1981).)

Thus we must conclude that the trial court's admission of this medical report constituted reversible error, and in such circumstances, the defendant must be granted a new trial.

For the reasons stated, the defendant's appeal is sustained, and his judgment of conviction on both counts is vacated. The papers in the case may be remanded to the Superior Court for a new trial.