January 25, 2022

**Supreme Court**

No. 2018-240-C.A.

(P2/14-2095A)

State     :

v.      :

Juan P. Benitez.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State               :

v.              :

Juan P. Benitez.        :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendant, Juan P. Benitez, appeals from a July 28, 2017 judgment of conviction and commitment on one count of second-degree child molestation entered following a jury trial.  On appeal, the defendant contends that: (1) "the trial court erred when it permitted [a physician testifying as an expert witness] to testify to hearsay statements unrelated to medical diagnosis or treatment;" and (2) "the trial court impermissibly allowed the state to mislead the jury by impeaching a witness with a statement he did not author, sign, or review."

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On July 14, 2014, Mr. Benitez was charged by criminal information with one count of second-degree child molestation for having "engage[d] in sexual contact" with his biological daughter, Nancy,[1] when she was "fourteen (14) years of age or under, in violation of [G.L. 1956] § 11-37-8.3 and § 11-37-8.4 * * *." A trial ultimately took place over seven days in March of 2017. We relate below the salient aspects of that trial.

## A

### The Testimony of Nancy

Nancy testified that, at the time of trial, she was sixteen years old. At trial, she identified defendant as her biological father, and it was her testimony that she had two younger sisters who were also the biological children of defendant. She added that, when her parents separated, she lived with her mother. She further testified that her father lived with her grandmother, her six uncles, and one of her

---

[1] For the purposes of confidentiality, we refer to the complaining witness pseudonymously.

aunts in Providence.[2] She went on to state that she saw defendant "most of the weekends" and that her sisters accompanied her on those visits.

It was then Nancy's testimony that, during those visits, her father would "take his penis, and put it in [her] butt and rub it there." She added that the abuse started when she was six years old. She stated that "in the beginning it would be like a game of some sort, to see who can get their clothes and get their pants off first." She testified that the abuse would "happen a lot[.]" She described a specific instance of abuse that purportedly occurred in the closet in her father's bedroom after she had taken a shower; it was her testimony that her sisters were in the same bedroom watching television at the time.

Nancy then testified that she told a cousin of hers about the abuse and that her cousin passed that information on to her own mother, who was Nancy's aunt. She added that, when her cousin made that disclosure, Nancy's grandmother was also present. She further stated that her grandmother "pull[ed her] aside" and asked if she was "sure" that her father was "not just playing around, playing a joke like he does sometimes * * *."

Nancy explained during her testimony that, on a particular occasion when a party was taking place, defendant "kept on calling" her and "tried to pull [her] into

---

[2] It was Nancy's testimony that, at some point, her father moved to a different location—although a number of his family members, including her grandmother, continued to reside with him.

the bathroom;" she added that she "pulled away," cried, and told defendant that she "didn't want that anymore, and * * * didn't like it." It was her testimony that the abuse ended after that interaction.

It was Nancy's testimony that a time came when she told her mother about the abuse. She testified that she told her mother because her mother had found out that Nancy was cutting herself on her wrist with a knife and her mother was "scared that [Nancy] would do something to [her] sisters because she didn't understand what was happening." Nancy added that she engaged in cutting behavior because she hoped that it would "distract" her mind from thinking about the abuse that she had suffered. She further testified that she told her mother about the abuse because, if she was not "able to see" her sisters, she "didn't know if [she] could protect them" or "didn't know that maybe something like that [was] happening to them too * * *."

In the course of a lengthy and thorough cross-examination of Nancy, she was questioned about her sisters being in the room during some of the instances of abuse, and she maintained that that was the case. She was also cross-examined with respect to her disclosure of the abuse to her cousin and the reactions of her aunt and grandmother.

## B

## The Testimony of Dr. Adebimpe Adewusi

Immediately prior to the testimony of Adebimpe Adewusi, M.D., a doctor who treated Nancy, defense counsel moved to exclude any mention by said doctor of the fact that Nancy had suicidal thoughts stemming from her concern that she could not protect her sisters from suffering the same abuse as she allegedly had suffered. Counsel contended that such statements were not relevant to medical diagnosis and thus did not fall within that exception to the hearsay rule; he added that the statements constituted impermissible bolstering and vouching. In response, the prosecutor asked "that the Court allow the doctor to testify simply that [Nancy] showed concern for her sisters." The trial justice ruled that the statement that Nancy was concerned about her sisters was "reasonably pertinent to [Nancy's] past suicidal ideations." He also commented that Nancy's concern for her sisters would "not be new to the jury."

Subsequent to the trial justice's ruling, defense counsel raised an additional objection to the doctor's testimony. He contended that the doctor should not be permitted to testify with respect to what Nancy told the doctor about her disclosure of the abuse to her cousin, which information eventually was passed on to her aunt and was heard by her grandmother; nor, defense counsel further contended, should the doctor be permitted to testify with respect to what Nancy told her about the

responses to that disclosure. Defense counsel argued that such statements did not fall within the exception to the hearsay rule concerning statements made for the purposes of medical diagnosis or treatment. He then posited that the doctor should also not be permitted to testify as to Nancy's statement that her sisters were in the room when some of the abuse allegedly occurred; he argued that that statement was "narrative * * *." The trial justice overruled defendant's objection and stated as follows:

> "[The statements at issue were] examples of different pressures that may play upon the mind of a patient who presents to a physician and the physician knows that there were past suicidal ideations, although, never attempts. It's incumbent upon the physician to look into all particular matters that may affect what went into those suicidal ideations. These statements are inextricably intertwined with the physician's exam and in taking of the history and the obtaining of all relevant and reasonably pertinent information."

Doctor Adewusi then testified that she worked at Hasbro Children's Hospital as a "child abuse pediatrics fellow," meaning that she specialized in the area of child abuse pediatrics. Having been qualified as an expert, Dr. Adewusi testified about the type of examination she usually conducts and how she conducted Nancy's physical examination. When the prosecutor started to question the doctor about her conversation with Nancy prior to beginning the physical examination, defendant incorporated by reference his previous objections to the doctor's

testimony.  The prosecutor then requested permission to proceed by posing leading questions to the doctor, and defense counsel stated that he had no objection.

The remainder of the doctor's testimony, which spans only three transcript pages, proceeded in pertinent part as follows:

> "[PROSECUTOR]: And during your talk and your conversation consult with [Nancy] for medical purposes and diagnosis, you noticed that she had some physical manifestations or marks on her body on her arms and wrists, correct?
>
> "[DOCTOR]: Yes, on her left forearm.
>
> "[PROSECUTOR]: And pursuant to seeing that, you did inquire of her as to what those were, correct?
>
> "[DOCTOR]: Yes.
>
> "[PROSECUTOR]: And she stated she denied having any suicidal thoughts at that moment, correct?
>
> "[DOCTOR]: Yes.
>
> "[PROSECUTOR]: But she did say that she had concern for her sisters, correct?
>
> "[DOCTOR]: Yes.
>
> "* * *
>
> "[PROSECUTOR]:  * * * [Nancy] also revealed to you that she had told a cousin, correct?
>
> "[DOCTOR]: She said she made a disclosure to her paternal cousin.

"[PROSECUTOR]: Paternal cousin and who in turn then revealed it to her paternal family and her grandmother, correct?

"[DOCTOR]: Yes. She said it made its way to the paternal grandmother.

"[PROSECUTOR]: At some point she revealed to you that sometimes when the alleged abuse was happening that her sisters would be in the room, correct?

"[DOCTOR]: Yes.

"* * *

"[PROSECUTOR]: And that in regards to her disclosure to her family members, that her paternal grandmother and her paternal aunt stated that it was just probably him playing around how dads play, correct?

"[DOCTOR]: Yes, she made that statement."

No further objections were made, and defense counsel did not cross-examine the doctor.

## C

### The Testimony of Douglas Harris

Douglas Harris testified on defendant's behalf, identifying himself as defendant's brother-in-law. During the course of the state's cross-examination of Mr. Harris, he was asked if defendant was ever left alone with defendant's children, and Mr. Harris replied that defendant was not. The prosecutor then asked whether, prior to an earlier hearing in the case, Mr. Harris had given a statement to

defense counsel. At that point, defense counsel objected and a sidebar conference ensued.

Defense counsel contended that, if the state was trying to impeach Mr. Harris with a summary of his potential testimony which had been prepared by defense counsel and provided to the prosecutor during discovery pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure (the statement at issue), it was not permissible because Mr. Harris did not prepare, review, or sign that statement. Defense counsel expressly conceded that "[i]f they want to refresh recollection, you can refresh with anything * * *." The trial justice overruled the objection, stating that they would "see what the witness says when the particular concepts that are set forth in the statement are presented to the witness." The prosecutor then proceeded to question Mr. Harris, and no further objection was made by defense counsel.[3]

Later in the state's cross-examination of Mr. Harris, he was asked whether or not he "remember[ed] telling [defense counsel] that [Nancy's sister] came out to the porch" during a particular conversation between Nancy and Mr. Harris. He stated that he did not remember. The prosecutor asked whether looking at the statement at issue would help him remember, to which question defense counsel

---

[3] The defendant concedes in his brief before the Court that the just-described statement at issue was only being used to refresh Mr. Harris's recollection, and not to impeach, the first time it was used in cross-examination. It is the second use of that statement (which is described *infra*) that defendant contends was improper.

- 9 -

objected, reiterating his contention that the state could not use the statement at issue to impeach Mr. Harris; defense counsel averred that the state was trying to "impeach by omission * * *." Again, defense counsel conceded that the state could "attempt to refresh [the witness's] memory," but he objected to the statement being used to impeach "if that were to happen." The trial justice overruled the objection and offered defense counsel a continuing objection, to which defense counsel responded, "[W]e'll see where it goes." The prosecutor then asked Mr. Harris if the statement at issue helped him remember if he talked to defense counsel about Nancy's sister coming onto the porch, and he stated that it was not in the statement but that he "did talk about it." Defense counsel did not object.

The defendant was ultimately found guilty by the jury on the one count against him. After his motion for a new trial was denied, he was sentenced to fifteen years, with six years to serve and nine years suspended, with probation; he was also required to register as a sex offender. The defendant then filed a timely appeal to this Court.

## II

### Standard of Review

We have stated that "[w]e review a trial justice's admission of evidence under the deferential abuse of discretion standard." *State v. Brown*, 9 A.3d 1240, 1247 (R.I. 2010). Under that standard, "[i]t is well established that this Court will

- 10 -

not disturb a trial justice's ruling on an evidentiary issue unless that ruling constitutes an abuse of the justice's discretion that prejudices the complaining party." *State v. Flori*, 963 A.2d 932, 941 (R.I. 2009) (internal quotation marks omitted); *see also State v. Gomez*, 848 A.2d 221, 232 (R.I. 2004).

## III

## Analysis

## A

### The Testimony of Dr. Adewusi

On appeal, defendant contends that the trial justice "committed reversible error when [he] allowed a Hasbro physician to vouch for the complaining witness by corroborating her narrative statements unrelated to medical diagnosis or treatment." He takes specific issue with the testimony of Dr. Adewusi, which indicated that Nancy told her that, in defendant's words: (1) "the molestation occurred when her sisters were in the room;" (2) "she feared for the safety of her sisters;" (3) "she told her cousin who told her mother who told [Nancy's] grandmother [about the abuse];" and (4) "her grandmother replied [that] her father was just playing games." He further posits that that testimony was not merely cumulative but also constituted improper bolstering which was "highly inflammatory, prejudicial and unsupported by any other evidence." He avers that

the testimony of Dr. Adewusi at issue had "no bearing on the question of medical diagnosis or treatment."

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." R.I. R. Evid. 801(c). As a general rule, hearsay statements are inadmissible; however, there are "myriad exceptions to the rule" including the medical diagnosis or treatment exception with which we are concerned in this case. *State v. Watkins*, 92 A.3d 172, 187 (R.I. 2014); *State v. Gaspar*, 982 A.2d 140, 151 (R.I. 2009). The rationale behind this exception is that "a person will presumably be truthful to a physician from whom he expects to receive medical attention." *State v. Pina*, 455 A.2d 313, 315 (R.I. 1983). The medical diagnosis or treatment exception provides that the following are exempt from the prohibition against the use of hearsay:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial." R.I. R. Evid. 803(4).

In the course of applying the medical diagnosis or treatment exception, we have stated that "[t]he test for determining admissibility hinge[s] on whether what

has been related by the patient will assist or is helpful in the diagnosis or treatment of [the patient's] ailment." *Watkins*, 92 A.3d at 187 (quoting *Gaspar*, 982 A.2d at 151); *see also State v. Ucero*, 450 A.2d 809, 815 (R.I. 1982). "Statements that narrate details unconnected with either diagnosis or treatment, however, are inadmissible unless they fall under another hearsay exception." *Watkins*, 92 A.3d at 187 (internal quotation marks omitted); *see also Pina*, 455 A.2d at 315. We have further opined that "[w]hen statements about causation enter the realm of assigning fault, it is unlikely that the patient or the physician consider them related to diagnosis or treatment." *Gaspar*, 982 A.2d at 151; *see also Pina*, 455 A.2d at 315.

Having thoroughly reviewed Dr. Adewusi's testimony as well as the other evidence adduced at trial, we are of the decided opinion that, to the extent that defendant's contentions concerning Dr. Adewusi's testimony were preserved, the trial justice did not abuse his discretion in admitting Dr. Adewusi's testimony with respect to the four statements with which defendant takes issue. In the context of this case, those statements were reasonably pertinent to Dr. Adewusi's diagnosis and treatment of Nancy.

We begin by noting that it is clear from the record that the prosecutor and the trial justice both went out of their way to treat Dr. Adewusi's testimony with delicacy; great effort was taken to ensure that Dr. Adewusi's testimony did not go

beyond that which is permitted under the medical diagnosis or treatment exception to the hearsay rule and did not cross the line into impermissible bolstering. The prosecutor elicited all of the testimony at issue by asking leading questions (*see* Part I.B, *supra*), and the doctor's testimony on this topic itself was very brief, spanning only approximately three transcript pages.

A review of the record similarly makes clear that Nancy did not present to Dr. Adewusi with merely physical injuries; she was also in need of treatment for the psychological injuries that resulted from the abuse she had allegedly suffered. Indeed, Nancy herself testified that she had been cutting herself, and Dr. Adewusi testified to having noticed the resultant marks on Nancy's forearm. What is more, Dr. Adewusi testified that the purpose of gathering information from Nancy (or from any other patient) was for medical diagnosis and treatment in order to allow her to provide treatment recommendations, including whether or not the patient "need[ed] to see a therapist urgently[.]"

We have been very clear that "a statement made to a treating physician is not per se inadmissible merely because it involves the patient's emotional state; when an evaluation contains a psychological element as well as a physical one, those statements, much like the physical evaluation, may be pertinent to diagnosis and treatment." *Watkins*, 92 A.3d at 188; *see also Vallinoto v. DiSandro*, 688 A.2d 830, 840-41 (R.I. 1997) (noting that the plaintiff was being treated for

psychological rather than physical injuries and holding that statements made by the plaintiff to her "social worker regarding her sexual activity with [the defendant] were directly relevant to the diagnosis of her mental state and the treatment that she was receiving for her alleged mental anguish and would be admissible").

It is true that the doctor's testimony with respect to Nancy being concerned for her sisters, that her sisters were in the room when some of the abuse occurred, the fact that Nancy had disclosed the abuse to her father's family, and her grandmother's reaction were all relevant to Nancy's psychological, as opposed to her physical, health. However, the record is clear that it was not merely Nancy's physical health that Dr. Adewusi was treating. Given Nancy's history of self-harm and the resultant importance of treating the effect on her mental health of the abuse she purportedly suffered, we perceive no reversible error in the trial justice's determination that the statements at issue were "inextricably intertwined" with Dr. Adewusi's examination and with her need to obtain all the reasonably pertinent information needed to treat Nancy.[4]

---

[4] We further note that defendant's contention that Dr. Adewusi's testimony constituted impermissible bolstering is without merit. Impermissible bolstering is "what typically occurs when one witness offer[s] an opinion regarding the truthfulness or accuracy of another witness'[s] testimony." *State v. Watkins*, 92 A.3d 172, 189 (R.I. 2014) (internal quotation marks omitted); *see State v. Adefusika*, 989 A.2d 467, 479 (R.I. 2010); *see also State v. Ceppi*, 91 A.3d 320, 332 (R.I. 2014) (stating that bolstering can also occur "[e]ven when a witness does not literally state an opinion concerning the credibility of another witness but his or

What is more, even if one or more of the aspects of Dr. Adewusi's testimony that are at issue did not precisely fall within the medical diagnosis or treatment exception to the hearsay rule, those statements were cumulative and harmless in light of the other evidence adduced at trial.

"Cumulative evidence means [evidence] tending to prove the same point to which other evidence has been offered." *State v. Lynch*, 854 A.2d 1022, 1032 (R.I. 2004) (internal quotation marks omitted). We have stated that "the admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when [the] defendant's guilt is sufficiently established by proper evidence." *State v. Robinson*, 989 A.2d 965, 979 (R.I. 2010) (internal quotation marks omitted). The test to be applied is "a retrospective one, administered at the close of all the evidence to determine whether the admission of certain evidence was harmless in light of all the evidence admitted on that point." *Watkins*, 92 A.3d at 189 (internal quotation marks omitted).

A review of the record in this case indicates that the four statements by Dr. Adewusi with which defendant takes issue were also testified to independently by

_____

her testimony would have the same substantive import") (internal quotation marks omitted).

Doctor Adewusi did not express a view one way or another about the veracity of what Nancy told her; she merely relayed what Nancy had said. "We have held that a medical professional simply reiterating a patient's statement without passing judgment on the accuracy or credibility thereof does not constitute improper bolstering." *Watkins*, 92 A.3d at 190.

Nancy. Nancy specifically testified about her concern for her sisters and about her consciousness that she "didn't know that maybe something like [what had happened to her was] happening to them too * * *." She further testified that her sisters were in the same bedroom during a particular instance of abuse. She went on to testify that she told her cousin about the abuse, who then told Nancy's aunt and grandmother. Nancy stated at trial that her grandmother's reaction was to ask her if she was "sure" that her father was not just "playing around * * *." Nancy was then subjected to a lengthy and thorough cross-examination, which specifically touched on her sisters being in the room during one of the instances of abuse, her disclosure of the abuse to her father's family, and her grandmother's reaction. Thus, Dr. Adewusi's short testimony with respect to various facts that Nancy had provided to her in the course of her evaluation of Nancy was simply a repetition of Nancy's own lengthy testimony which was highly specific; and, significantly, Dr. Adewusi did not opine as to the veracity *vel non* of Nancy's statements. In the opinion of this Court, it was cumulative evidence, the admittance of which was harmless.[5]

---

[5] Given our conclusion with respect to the applicability of the medical diagnosis or treatment exception to the hearsay rule to Dr. Adewusi's testimony at issue we need not address any of the other hearsay exceptions discussed by the parties.

**B**

**The Testimony of Mr. Harris**

With respect to the testimony of Mr. Harris, defendant avers on appeal that "[t]he trial court committed reversible error when it allowed the State to impeach Douglas Harris * * * with a statement he did not author, sign, review, or even know existed at the time of trial." He further posits that "the State certainly did not clarify – in any meaningful way – for the jury that it was not Mr. Harris's actual statement."

After thoroughly reviewing the transcript and the parties' arguments, the Court is convinced that defendant's contentions with respect to the cross-examination of Mr. Harris are waived. *See State v. Doyle*, 235 A.3d 482, 493 (R.I. 2020) ("[T]he raise-or-waive rule is a fundamental principle in this state that is staunchly adhered to by this Court[;] * * * a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court.") (internal quotation marks omitted). Defense counsel objected to the statement at issue being used to impeach Mr. Harris "if that were to happen," and then the trial justice offered counsel a continuing objection. He responded, "we'll see where it goes," and he did not object thereafter. Defense counsel seems to have merely raised an objection to the *possibility* that the statement at issue *might* be used to impeach Mr. Harris at some point in the future, but he then did not articulate any

objection to the ensuing questions which Mr. Harris was actually asked with respect to the statement at issue. *See State v. Tejeda*, 171 A.3d 983, 1001 (R.I. 2017) ("[A] failure to object in the vital context of the trial itself * * * [constitutes] a waiver of the evidentiary objection and [is] therefore an issue that may not be raised on appeal.") (internal quotation marks omitted).

What is more, it is equally clear to this Court after reviewing the transcript that, even if this contention were properly before us, the statement at issue was not used for the purpose of impeachment; rather, it was used merely to refresh Mr. Harris's recollection—an entirely permissible use. *See State v. Souza*, 708 A.2d 899, 903 (R.I. 1998) ("When attempting to refresh a witness's memory, the examining attorney need not use a document that has been written either by the witness or under his or her direction. Rather, Rule 612 [of the Rhode Island Rules of Evidence] merely refers to using a writing to refresh a witness's memory for the purpose of testifying.") (internal quotation marks omitted); *see also State v. Santiago*, 81 A.3d 1136, 1141 (R.I. 2014) ("It is well settled that, when a party refreshes a witness's recollection, the witness's present memory of the event, rather than the memorandum used to revive the memory, stands as the evidence.") (internal quotation marks omitted).

Accordingly, we are unable to perceive any abuse of discretion on the part of the trial justice with respect to Dr. Adewusi's testimony or Mr. Harris's testimony.

# IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Juan P. Benitez. |
| **Case Number** | No. 2018-240-C.A.<br>(P2/14-2095A) |
| **Date Opinion Filed** | January 25, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General<br>For Defendant:<br><br>Gary G. Pelletier, Esq. |