**In re JONATHAN.**

**No. 78–431–Appeal.**

Supreme Court of Rhode Island.

June 10, 1980.

 

Barbara Hurst, Asst. Public Defender, for appellant.

Chester Lupton, Legal Counsel, Child Welfare Services, Providence, for appellee.

## OPINION

DORIS, Justice.

This is an appeal from a Family Court decree awarding care, custody, and control of Jonathan, a minor child, to the Child Welfare Services (C.W.S.) subject to reasonable visitation rights by Beatrice, the mother of the child.

On January 18, 1978, C.W.S. filed a petition in Family Court under the provisions of G.L. 1956 (1969 Reenactment) § 14–1–3(H), as amended by P.L. 1969, ch. 252, § 1, alleging that Jonathan, age thirteen at the time, was dependent and neglected by the failure of his mother to supply him with adequate shelter, care, and supervision.

Jonathan was initially placed temporarily with an older sister, Marcia, and later with an older brother, Mark.

On March 16, 1978, Beatrice filed a petition seeking a change in custody and requesting return of Jonathan to her care and control. The petition of Beatrice and the petition of C.W.S. were consolidated for trial.

The only testimony at the hearing was that of Stephen Sheridan, a caseworker for C.W.S., and the testimony of Jonathan. Mr. Sheridan stated that in November 1977, he received a complaint from Marcia concerning Jonathan's welfare. After several unsuccessful attempts to visit the home of Jonathan, Sheridan in company with Marcia on January 11, 1978, was admitted to the residence by Jonathan. Sheridan described the building in which Jonathan was living as a "store front" with a door and a large plate-glass window that was covered on the inside with black paper so that it was impossible to see inside the premises from outside.

Jonathan testified that the premises in which he and his mother were living con-

sisted of one large room approximately fifteen feet wide and thirty feet deep and a small bathroom containing a toilet and sink but no shower or bathtub and filled with miscellaneous items such as boxes and towels. He further testified that the large room was filled with Avon products, boxes, and furniture that his mother was selling. He further stated that the room was littered with trash and garbage.

Jonathan testified that there were no beds in the large room but that he and his mother slept next to each other on a small rug placed over wall-to-wall carpeting. He had a small corduroy-covered cushion which he seldom used for a pillow. Both he and his mother dressed in a curtained-off area in the large room. It is undisputed that Beatrice cooked about half of Jonathan's meals in a small oven, provided him with money for school lunches, and took him to restaurants where he was allowed to choose from the menu for the rest of his meals. Heat for the premises was provided by an electric heater. Jonathan stated that his mother provided him with clothes, clean laundry, soap and towels for washing, school books, and took him to movies and cultural events. He testified that perishable foods were kept in a box near the door and in a refrigerator in a nearby store. He further testified that he bathed twice a week either at the home of his mother's friends or at the home of his sister. His clothes were washed by his mother at a laundromat. He did not complain of any physical ailments. He stated that he attended school regularly, was a member of an accelerated class, and was a member of the local boy's club that was located nearby. He stated that he usually arrived home from school around 2:30 p.m. and that his mother was there then as well as at night. He stated that he would like to live with a sister in Connecticut because he loved her.

The trial justice reviewed this testimony and found that Jonathan was living in an unsanitary environment. He also was concerned with the sleeping arrangements. Based on this testimony, the trial justice found that the mother, Beatrice, had failed to provide adequate shelter for Jonathan

and found him to be dependent and/or neglected, and pursuant to G.L. 1956 (1969 Reenactment) § 14–1–34, as amended by P.L. 1978, ch. 77, § 1, awarded custody and control of Jonathan to C.W.S. subject to reasonable visitation rights by Beatrice. At the same time the trial justice denied Beatrice's petition for a change in custody.

In her appeal, appellant alleges that the trial justice erred in finding Jonathan dependent and neglected under § 14–1–3(H). She contends that the right to raise one's child is a fundamental constitutional right upon which the state may intrude only when it has a "compelling interest." She argues that in order to show a "compelling interest," the state must prove by clear and convincing evidence that the care and custody provided by the parent actually harmed the child.

Child Welfare Services argues that the parents' right to the custody and care of their child is not absolute but subject to the right of the state as *parens patriae* to limit parental rights as the child's welfare is affected. Child Welfare Services asserts that when the state's authority to remove a child temporarily from the care and custody of a parent rather than the authority to terminate parents' rights finally is being contested, a "rational basis" rather than a "compelling interest" standard should be applied. Child Welfare Services contends that the state need not prove actual physical or emotional harm to the child but rather it is required only to prove the need to protect the child from the possibility of harm. Relying on *In re Denise & Kevin*, R.I., 408 A.2d 606 (1979); *Engelhardt v. Bergeron*, 113 R.I. 50, 57, 317 A.2d 877, 882 (1974), wherein we have stated that in custody cases the best interest of the child is paramount, C.W.S. argues that preventative as well as remedial action must be available to the state.

The federal cases in this field, although not specifically addressed to the issue of the nature of a parent's right in a dependency proceeding, have indicated that a parent has a constitutionally protected interest in

maintaining the integrity of the family unit. *See Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531, 537 (1977); *Stanley v. Illinois,* 405 U.S. 645, 651–52, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551, 558–59 (1972); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042, 1045 (1923). As a result of these decisions, a number of federal district courts have held that a parent's right to custody of a child is fundamental and a state may intrude on that right by a showing that it has a compelling interest in protecting the child's welfare.

In child custody cases arising out of neglect and/or dependency, we have consistently followed the rule that the best interest of the child is paramount. We have not said, however, that custody may be taken from the parent on a finding by a trial justice on a single factor to the exclusion of other factors in determining whether a child is neglected or dependent. A decision based only on the child's physical needs tends to ignore medical or psychological needs that form an important part of maintaining a family relationship. The question to be decided here is whether or not G.L. 1956 (1969 Reenactment) § 14–1–3(H),[1] requires a finding by the trial justice that the conditions under which the child is living are harmful to the child before the child may be found to be dependent and/or neglected.

 We hold that the trial justice in a neglect and/or dependency proceeding be required at least to articulate his findings in regard to the emotional and physical welfare of the child in light of the parent's alleged misconduct. Unless the state can prove by clear and convincing evidence that a child is actually suffering or is likely to suffer physical and/or emotional harm, there is no reason to disturb the basic security of a family relationship. *See Alsager v. District Court of Polk County, Iowa,* 406 F.Supp. 10, 22 (S.D. Iowa 1975), *aff'd,* 545 F.2d 1137 (8th Cir. 1976).

We therefore hold that G.L. 1956 (1969 Reenactment) § 14–1–3(H), requires a finding that the allegedly offending conditions or conduct is, or is likely to become harmful to the best interest of the child before the child may be found to be dependent and/or neglected. Here, we have carefully reviewed the record and find that there is no evidence that Jonathan has been harmed either physically or emotionally, nor is there any evidence from which one may reasonably conclude or infer that the child was likely to suffer harm notwithstanding evidence of the unconventional living conditions.

 In the absence of evidence that Jonathan was physically or emotionally harmed or likely to suffer physical or emotional harm, the state has failed to sustain its burden of proving that Jonathan is neglected and/or dependent as a result of living with his mother. The trial justice therefore erred when he found Jonathan was neglected and/or dependent.

The appeal by Beatrice is sustained, the decree finding Jonathan neglected and/or dependent is reversed, the denial of the petition of Beatrice for a change in custody is reversed, and the case is remanded to the Family Court for the entry of a decree in accordance with this opinion.

1. General Laws 1956 (1969 Reenactment) § 14–1–3, as amended by P.L. 1969, ch. 252, § 1, in pertinent part reads as follows:

"  *  *  *

"H. The terms 'dependent' and/or 'neglected' when applied to a child shall mean and include any child—

Who is homeless or destitute or abandoned or dependent upon the public for support, or who has not the parental care or guardianship or who habitually begs or receives alms, or whose home, by reason of neglect, cruelty, drunkenness or depravity on the part of the parent or parents having custody or control of such child is an unfit place for such child, or any child under eight (8) years of age found peddling in the streets or any child found engaging in an occupation or being in a situation dangerous to life, or limb or injurious to the health or well-being of such child  *  *  *."