**In re LUZ J. & Luz M.**

**and**

**In re SONIA.**

Nos. 81–263–Appeal, 81–313–Appeal.

Supreme Court of Rhode Island.

July 13, 1982.

Laureen Quaranto D'Ambra, Legal Counsel, Dept. for Children and Their Families, Providence, for appellants.

Stone, Clifton & Clifton, William C. Clifton, Providence, for appellee.

## OPINION

MURRAY, Justice.

These are two consolidated appeals.[1] In each case the Department for Children and their Families (DCF) seeks review of orders entered in the Family Court relating to two sisters: Sonia (Sonia) and Luz Joanna (Luz).

On November 5, 1980, the mother of the two children took Sonia, at that time three years old, to the St. Joseph's Hospital emergency room. According to the mother, the trip was necessitated by the child's problems with an asthmatic condition and a stomach ache which resulted in vomiting. While at the hospital, the mother asked the physician on duty, Dr. Adib Mechefe (Mechefe), if he could prescribe medicine for two burns Sonia had received on her thighs. The burns, located on the anterior portion of each thigh, resulted from a heated clothes iron that had come in contact with Sonia's legs the previous night. After examining the burns, Mechefe filed a "Physician's Report of a Battered and/or Abused Child" with DCF. In addition, a request was made that Luz, at that time sixteen months old, should be brought into the hospital for an examination. After the two children were examined, the decision was made to allow Luz to return home with her mother, whereas Sonia would be hospitalized overnight.

---

1. The parties, evidently unaware of the fact that only No. 81–263 was before the court, argued and briefed the issues as if there had been a consolidation of the two cases. Later, when the parties were made aware of the problem, they stipulated to the consolidation.

In response to the Battered and/or Abused Child Report and certain investigations made by Alan Tannenbaum (Tannenbaum), a social caseworker with DCF, temporary custody of the two children was given to DCF pursuant to an order of detention, granted ex parte. In addition, DCF filed two petitions in the Family Court, each alleging that the child was dependent, neglected, and/or abused. A probable-cause hearing was held on November 11, 1980; the Family Court ordered Luz returned to her mother and Sonia was to remain in the custody of DCF pending trial.

At trial, DCF presented three witnesses: Tannenbaum, Mechefe, and William DeCaporale (DeCaporale), a social worker for St. Joseph's Hospital. Tannenbaum testified that at the hospital he had spoken with DeCaporale concerning the injuries to Sonia. Also, Sonia's mother had given an explanation of how these injuries had occurred. The mother had told Tannenbaum that Sonia, while in the care of a babysitter, had a clothes iron fall on her, which accident caused the injuries. Tannenbaum also spoke to the babysitter concerning the incident. Subsequently, on November 7, 1980, the mother accompanied Tannenbaum to the hospital where DeCaporale conducted a demonstration using the iron to illustrate that the two injuries could not have been caused by a single fall of the iron. Tannenbaum explained to the mother that if another more reasonable explanation was not provided, DCF would have no alternative but to file a dependency, neglect, and/or abuse petition. After the petition had been filed and during the arraignment, the babysitter explained to Tannenbaum that Sonia had been burned while carrying the iron.

In his testimony, DeCaporale initially explained that this was not the first time he had referred a member of this family to DCF. In respect to the present case, DeCaporale stated that he had spoken with both the mother and the attending physician and that he had personally observed the burns on Sonia's thighs. He also noted that an explanation, different from the mother's, had been given later at the hospital by the babysitter. The second explanation offered had the babysitter accidentally walking into Sonia with the heated iron. DeCaporale then described the manner in which he, in the presence of the mother and of Tannenbaum, had demonstrated through the use of the iron that neither the mother's nor the babysitter's version of the incident adequately explained the burns.

Mechefe, the final witness for DCF, testified that in his professional opinion he did not believe the injuries were self-inflicted or accidental, rather he was of the opinion that they had been induced. He termed the chances of the burns, being caused by an accident "very, very remote." In fact, he stated that both injuries had probably occurred while Sonia "was lying down" and at approximately the same time.

At the close of the case presented by DCF, counsel for the mother brought a motion to dismiss both petitions. In regard to the petition relating to Luz, the trial justice dismissed the petition finding that DCF had not proven any of its allegations by clear and convincing evidence. In regard to the petition relating to Sonia, the trial justice dismissed only the first count of the petition, the count alleging that the mother had inflicted injury upon the child including excessive corporal punishment. He allowed the remaining portion of the petition to stand and requested that counsel for the mother proceed with the defense.

The defense presented the mother and the babysitter as witnesses. Their testimony reveals that the mother was a close friend of the babysitter and her family, and that she often spent substantial periods of time at their home. Also, according to their testimony, the mother was not present when the injury occurred. Both witnesses testified that initially the babysitter had lied to the mother by telling her that the iron had fallen on Sonia. The mother then relayed this version of the incident to the hospital staff as well as to DCF. Later, at the arraignment, the babysitter informed the mother that Sonia had been injured while attempting to carry the iron. Evi-

dently the babysitter had requested that Sonia take the iron to a second-floor bedroom. According to the babysitter, the initial lie was caused by her fear that the mother would be "mad" with her.

In his bench decision, the trial justice found that DCF had proven by clear and convincing evidence the allegations of its petition relating to dependency and neglect, in particular, that Sonia is without proper parental care and supervision and that the mother has failed to provide Sonia with a minimum degree of care, supervision, and/or guardianship. The trial justice then ordered Sonia committed to the care, custody, and control of DCF. He also ordered DCF to submit a plan for the reunification of the mother and Sonia.

A reunification plan was submitted by DCF. The parties signed an amended version of the plan which reduced the time period involved to thirty days and deleted certain provisions relating to the mother's attendance at counseling sessions. After the thirty-day period had expired, DCF argued that they could not recommend that Sonia be sent home. Counsel for DCF also renewed her contention that the mother should be required to attend sessions with Providence Mental Health as well as a parenting class. The trial justice ordered the child returned to the mother; he based his decision upon the fact that the mother had totally and fully complied with the reunification plan. The trial justice stayed the decision for a seven-day period so that DCF could seek a stay pending appeal with this court. We granted the stay, and the parties are now before us.

In regard to the decision of the trial justice ordering DCF to return Sonia to the mother, we are of the opinion that the trial justice should have conducted an evidentiary hearing prior to ordering reunification.

General Laws 1956 (1969 Reenactment) § 14–1–34, as amended by P.L.1978, ch. 77, § 1, provides that the Family Court may modify or revoke a decree awarding custody of a dependent and/or neglected child to DCF "for good cause shown * * *." In the case of *In re Denise*, R.I., 408 A.2d 606

(1979), the mother of two children who had been adjudged dependent and placed in the care and custody of a state agency sought to alter the prior decree. In that case, we explained that

"It is well-settled doctrine that the court should not change or modify a previous order of care, custody and control of minor children absent a showing that there has been some alteration or change in the circumstances that existed at the time of the original order. *King v. King*, 114 R.I. 329, 331, 333 A.2d 135, 137 (1976). Where such modification is sought, it is incumbent upon the moving party to establish by a fair preponderance of the evidence that because of altered conditions or other good reasons a change is necessary in the interest of the children's welfare. *Vieira v. Vieira*, 98 R.I. 454, 457, 204 A.2d 431, 433 (1964); see *King v. King, supra.*" *Id.* 408 A.2d at 607.

In the present case, the trial justice based his decision to return custody to the mother upon the fact that she had fully complied with the requirements of the reunification plan. At the June 8, 1981 hearing, no evidence was taken by the trial court, despite the fact that counsel for DCF had presented two letters from DCF staff members which, in essence, recommended that Sonia not be reunited with the mother. In fact, one of the letters referred to several incidents occurring after the trial—all of which directly related to the parental-care-and-supervision issue. In conclusion, it was error for the trial justice to fail to conduct an evidentiary hearing to determine if circumstances had so changed as to warrant Sonia's return to the mother. Therefore, we shall return the case to the Family Court so that such evidentiary hearing can now be held.

In regard to the trial justice's dismissal of the petition relating to Luz, we are of the opinion that the petition should not have been dismissed.

As has been previously mentioned, defense counsel made a motion to dismiss after DCF had presented its case. The trial justice granted the motion, thereby dismissing the petition relating to Luz.

 The findings of a trial justice sitting without a jury will not be disturbed on appeal unless they are clearly wrong or unless he misconceived or overlooked material evidence. *In re Lee*, R.I., 442 A.2d 893, 897 (1982); *Engelhardt v. Bergeron*, 113 R.I. 50, 56, 317 A.2d 877, 881 (1974). In a jury-waived trial in which defense counsel makes a motion to dismiss at the close of the opposition's case, the trial justice sits as trier of law and fact. *Town of Charlestown v. Beattie*, R.I., 422 A.2d 1250, 1251 (1981); *Judd Realty, Inc. v. Tedesco*, R.I., 400 A.2d 952, 955 (1979). A defendant who moves for dismissal at the close of the opposition's evidence does not waive his right to offer evidence if such motion is denied. *Rowell v. Kaplan*, 103 R.I. 60, 66, 235 A.2d 91, 95 (1967).

 In his bench decision, the trial justice simply stated that DCF had not proven the allegations of its petition by clear and convincing evidence. He evidently did not believe that the evidence of harm to Sonia was sufficient to establish the likelihood of harm to Luz. Since we are of the opinion that evidence of harm to one child of a family is relevant to the issues raised by a dependency-and-neglect petition regarding another child of the family, the motion to dismiss should have been denied. "The state's role in protecting [a child] may properly be preventive of harm as well as remedial." *In re Lester*, R.I., 417 A.2d 877, 881 (1980). There is no requirement that a court wait until a child is actually harmed before such court provides the protection of the state. *See In re Lee*, R.I., 442 A.2d at 898 (Weisberger, J. concurring); *Custody of a Minor (No. 1)*, 377 Mass. 876, 882–83, 389 N.E.2d 68, 73 (1979). The need to protect the other sibling is especially apparent in a case such as this in which evidence of other incidents of neglect has been introduced. DeCaporale testified that on two prior occasions he had contacted DCF concerning this family and that Luz had been involved in both incidents.

Since defense counsel did not waive his right to present evidence by raising the motion to dismiss and since we have re-quired that an evidentiary hearing be held in regard to Sonia, it is also appropriate that we return the case regarding Luz to the Family Court for an evidentiary hearing. At such hearing both parties should be given an opportunity to present evidence so that the trial justice can determine whether or not it is in Luz's best interest to remain with the mother.

For the reasons stated, the appeals of DCF are sustained, the orders of the Family Court are vacated, and each case is remanded to the Family Court for further proceedings consistent with this opinion.