**In re JESSICA C. et al.**

**No. 95-473-Appeal.**

Supreme Court of Rhode Island.

March 17, 1997.

Frank P. Iacono, Jr., John J. O'Brien, III (CASA). Anthony E. Angeli, Jr., Regina M. Gibb (DCYF) for Plaintiff.

Paula Rosin, Asst. Public Defender, Michelle Cote, pro se, for Defendant.

## OPINION

LEDERBERG, Judge.

The respondent mother in this case has appealed a Family Court decree finding that her four children were sexually abused and neglected. Thereupon, the Family Court committed the children to the care and custody of the Department of Children, Youth and Families (DCYF). On appeal to the Su-

preme Court, the respondent contended that the trial justice had improperly admitted certain hearsay statements made by the children and had erroneously permitted several witnesses to offer an opinion on the credibility of the children. The respondent also argued that the trial justice had committed reversible error by qualifying one of the state's witnesses as an expert and by permitting that witness to testify about statements made by one of the children. For the reasons stated below, we deny and dismiss the respondent's appeal. A brief summary of the facts follows; additional facts are presented in our analysis of the issues raised on appeal.

## Facts and Procedural History

The respondent is the mother of Jessica (born November 23, 1988), Jeffrey (born July 5, 1987), Heather (born June 22, 1986), and Raymond (born June 11, 1985). On June 12, 1989, DCYF filed a petition with the Family Court, alleging that Jessica was a dependent child.[1] On February 20, 1991, the Family Court accepted the admission of dependency made by respondent and Jessica's putative father and committed Jessica to. the care, custody, and control of DCYF. At that time, Jessica was placed at home with her parents on the condition that Jessica and her siblings have no contact with respondent's brothers, Dennis and Alfred, or the brothers' friends, Lionel and Edward Martin, and on the further condition that respondent not leave her children at the home of their maternal grandmother if respondent's brothers or their friends were present.

On October 8, 1992, DCYF filed petitions alleging that Jeffrey, Heather, and Raymond were dependent and neglected children. In March 1993, before the petitions were adjudicated, all four children were removed from their parents' home on the basis of Jessica's allegations that she and Heather had been allowed to sleep at their maternal grandmother's home while respondent's brother, Dennis, was present.

On August 1, 1994, DCYF amended the petitions for the four children to include allegations that the children had been sexually abused. At a hearing on the amended petitions on several dates in December 1994 and in January and February 1995, DCYF presented the testimony of child protective investigators (CPI's) and of several individuals who had provided counseling services to the children.

On April 10, 1995, the trial justice found that all four children had been sexually abused and neglected in regard to both parents. The Family Court committed the children to the care, custody, and control of DCYF. The respondent filed the instant appeal pursuant to G.L.1956 § 14–1–52, and, on October 1, 1996, following a prebriefing conference, the case was assigned to the regular calendar for full briefing and argument.

## Admission of Hearsay Statements

At trial, three CPI's, Richard Cardin (Cardin), Arthur McAteer (McAteer), and Darryl Superczynski (Superczynski), were permitted to testify over respondent's objection about hearsay statements the children had made to them during the DCYF"s investigation of this case. In overruling respondent's objection to the admission of these statements, the trial justice determined that this evidence was admissible under § 14–1–69.

Section 14–1–69 provides:

"**Hearsay.**—In any custody and/or termination trial where a petition has been filed by the department of children, youth, and families in accordance with §§ 14–1–11, 40–11–7, and/or 15–7–7 in the family court, the court may, in its discretion, permit as evidence any statement by a child under the age of thirteen (13) years old about a prescribed act of abuse, neglect, or misconduct by a parent or guardian, if that statement was made spontaneously within a reasonable time after the act is alleged to have occurred, and if the statement was made to someone the child would normally

---

1. The term "dependent" refers to "any child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed or threatened with harm due to the inability of the parent or guardian, through no fault of the parent or guardian, to provide the child with a minimum degree of care or proper supervision." G.L.1956 § 14–1–3(6).

turn to for sympathy, protection, or advice."

Our careful review of the extensive record revealed the following in respect to the hearsay statements made by the children to witnesses who testified at the Family Court hearings from December 1994 to February 1995. First, Cardin testified regarding statements the four children made in late June and early July 1993, almost three months after they had been removed from the scene of the alleged abuse and placed in foster care. At the time Cardin interviewed the children, Raymond and Jeffrey had been in therapy for approximately two months, and Jessica had already made allegations of sexual abuse to a mental-health counselor. Second, McAteer testified about statements made by Raymond and Jessica in December 1993. These statements were made nine months after the children had been placed in foster care, more than eight months after Jessica had made her initial allegations of sexual abuse and approximately one month after she had begun therapy, almost eight months after Raymond had begun therapy, and more than five months after both children had disclosed allegations of sexual abuse to Cardin. Third, Superczynski testified regarding statements made by Jeffrey and Raymond in late March and early April 1994, one year after the boys had been removed from their home and almost one year after they had begun therapy. At the time Jeffrey and Raymond made the statements about which Superczynski testified, both boys had already disclosed allegations of sexual abuse to their individual therapists, McAteer and Cardin, and to Detective Mark Turcotte of the Woonsocket police department.

On appeal, respondent asserted that the statements were not admissible under § 14-1-69, because the time between the alleged abuse and the hearsay statements was quite long and because, prior to making those statements, the children had already made allegations of abuse to several other individuals. The guardian ad litem for the children contended that the statements at issue were admissible under § 14-1-69 because they were made at the children's first safe opportunity to disclose allegations of abuse. This Court has held that a trial justice has broad, discretionary powers in evidentiary matters of this nature, and the trial justice's decision will be reversed only if that discretion has been abused. *In re Deborah M.*, 544 A.2d 572, 575 (R.I.1988) (citing *State v. Creighton*, 462 A.2d 980, 982 (R.I.1983)).

In *In re Deborah M.*—a child-custody proceeding like the one before us and therefore a case whose rationale would apply to this case—we observed that § 14-1-69 "liberalized the common law test for admission of children's out-of-court statements concerning their physical abuse" by eliminating "the requirement that the declarant must have been 'laboring under the stress of nervous excitement' when the statement was made." 544 A.2d at 574 (quoting *Creighton*, 462 A.2d at 982). We noted further, however, that "our treatment of spontaneity in earlier cases involving the hearsay statements of children remains instructive." *Id.* We then observed that under *State v. Nordstrom*, "the test to be applied is whether from the facts of a particular case the statements were spontaneous or impulsive or whether they were the product of reflection and deliberation," *In re Deborah M.*, 544 A.2d at 574–75 (quoting *State v. Nordstrom*, 104 R.I. 471, 476, 244 A.2d 837, 840 (R.I 1968)), and we cited *Creighton* for the proposition that "[g]enerally speaking, a less demanding time requirement is necessary in sexual-offense cases, particularly when the victim is a child of tender years." 544 A.2d at 575 (quoting *Creighton*, 462 A.2d at 982).

This Court has applied these standards in addressing the admissibility of hearsay statements under § 14-1-69. For instance, we have held that the passing of four days between the date of an alleged assault and its disclosure to a social worker constituted a reasonable time lapse for purposes of § 14-1-69 because, in the circumstances of that case, the disclosure was made at the child's "first opportunity to express herself without fear of reprisal from her [alleged abusers], and nothing in the record indicate[d] that her revelation to [the social worker] was premeditated or induced." *In re Deborah M.*, 544 A.2d at 575. We held, in *In re Jean Marie W.*, 559 A.2d 625, 631 (R.I.1989), that state-

ments made within three days of a child's placement in foster care were made within a reasonable interval from the time she was removed from the scene of her abuse because such a relatively short lapse in time could be reasonably attributable to the child's need to adapt to her new surroundings and new caretaker in order to feel sufficiently secure to tell her story. And, in *In re Kristen B.*, 558 A.2d 200, 205 (R.I.1989), we held that statements made to a social worker during the first few weeks after the child victim had been placed in foster care were admissible under § 14-1-69.

■ Despite the relaxed standards of timeliness and spontaneity under § 14-1-69, however, there are limits to the admissibility of hearsay statements made by children in custody and/or termination proceedings. Although we decline at this time to delineate those limits beyond our holdings in previous cases, our review of the record in this case revealed that significant lapses of time, ample opportunity for reflection and deliberation, and numerous previous disclosures of abuse had occurred, thereby suggesting that the statements may not have been made spontaneously or at the children's first safe opportunity to disclose the alleged abuse. Consequently, we are led to conclude that in the circumstances of this case, the spontaneity and timeliness requirements of § 14-1-69 arguably were not satisfied. Nevertheless, we are of the opinion that the admission of the hearsay testimony, even if erroneous, does not demand a reversal of the trial justice's decision that the children were sexually abused and neglected because the record has revealed ample, independent, competent evidence to support that decision.

Ellen Kenner, Ph.D. (Kenner), and Virginia Rockhill, Ph.D. (Rockhill), presented expert testimony about their treatment of Jeffrey and Raymond. Kenner was qualified as an expert witness in clinical psychology with a subspecialty in traumatized children and sexual abuse, and Rockhill testified as an expert in clinical psychology with a concentration in sexual abuse. This expert testimony was admitted under the medical-diagnosis exception to the hearsay rule. R.I.R.Evid. 803(4).

Kenner was Jeffrey's therapist beginning in April 1993 and was still treating him at the time of trial. At trial, Kenner opined to a reasonable degree of clinical certainty that Jeffrey was a sexually abused child. She testified that her opinion was based on Jeffrey's sexual acting out; his open disclosures of abuse by family members, including his parents; his vomiting and other behaviors; and his pattern of "holding in" secrets and then revealing them over time. Kenner further stated her opinion that Jeffrey had been sexually abused by both of his parents and stated the basis of that opinion.

Rockhill, who treated Raymond from April 1993 until July 1994, opined to a reasonable degree of clinical certainty that Raymond was a sexually abused child. Rockhill testified that the bases of her opinion were Raymond's consistent statements that he had been sexually abused, his improved "psychosocial functioning" after he had disclosed the abuse, and his "withdrawal and resistance to discuss anything at all about his biological family." Rockhill also testified about statements that Raymond made during therapy in which he alleged that his parents were among the individuals who had sexually abused him.

Rockhill further testified that on the basis of her psychological evaluation of respondent, she had concluded that respondent was incapable of meeting the physical and emotional needs of her children and lacked the intellectual capacity adequately to protect her children against abuse and neglect.

Our review of the record also disclosed undisputed evidence that, despite numerous reminders and warnings by DCYF, respondent consistently allowed her children to be in her brothers' presence, in clear violation of the court order that the children were to have no contact with these individuals. In addition, there was overwhelming, uncontroverted evidence that the children in this case were neglected. At trial, several CPI's, a DCYF social worker, and individuals from Head Start testified about their observations and their experiences with the children from 1990 until 1993, up to the time the children were removed from their home. This testimony revealed that the children were consis-

tently "filthy" and inadequately clothed and suffered from poor nutrition, medical neglect, and chronic lice. Although respondent was instructed how to bathe her children and treat their lice infestation, she proved incapable of doing so. At one point, Jessica's hair was found to be infested with fleas as well as lice. The testimony further indicated that respondent's home was "dirty" and "smelled awful" and that, in June 1991, respondent moved with her children into an apartment with no stove or refrigerator. At various times the children sustained injuries that demonstrated a complete lack of supervision or protection on the part of their parents. For instance, Heather was burned while carrying a lighted cigarette for her mother, and she received a small wound when her father accidentally threw a dart too close to her; Raymond burned his face when he threw a lighted match into a moped. Overall, this testimony attested to respondent's inability to care for and manage her children properly. Moreover, her skills as a caretaker did not improve despite the assistance of a variety of services offered to her over a significant period.

■ We note that the trial justice did not find that Heather or Jessica had been sexually abused by respondent or by anyone else. She did find, however, that the totality of the evidence compelled the finding that Heather and Jessica were "at risk of sexual abuse if allowed to be in the presence [of] and to reside with the parents." Because of the risk to Heather and Jessica and the finding of sexual abuse in regard to Jeffrey and Raymond, the trial justice correctly entered findings of sexual abuse in regard to all four children. *See In re Luz J.*, 447 A.2d 1148, 1152 (R.I.1982) (evidence of harm to one child relevant to issues raised by petition regarding another child in the family because of need to protect other child or children).

■ This Court will not disturb the findings of a trial justice sitting without a jury unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *In re Kristen B.*, 558 A.2d at 204. After reviewing the record, we are of the opinion that, even without the hearsay statements admitted under § 14-1-69, clear

and convincing evidence, *see In re Jonathan*, 415 A.2d 1036 (R.I.1980), existed to support the trial justice's findings that the children were neglected, that respondent sexually abused Raymond and Jeffrey and allowed others to abuse them, that Heather and Jessica were at risk of sexual abuse, and that respondent was incapable of protecting the children from that risk.

### Testimony Regarding Credibility of Children

The respondent next argued that the trial justice erroneously permitted three witnesses for DCYF to testify that the children's allegations of sexual abuse were credible. In support of her contention, respondent cited *State v. Haslam*, 663 A.2d 902 (R.I.1995), in which we held that certain expert testimony was inadmissible because it constituted impermissible vouching for the credibility of the complaining witness. *See also State v. Roderigues*, 656 A.2d 192 (R.I. 1995); *State v. Tavares*, 590 A.2d 867 (R.I. 1991).

In *Haslam*, this Court stated:

"The determination of the truthfulness or credibility of a witness lies within the exclusive province of the jury. * * * Because credibility determinations are solely a jury function, a witness is not permitted to offer an opinion concerning the truthfulness of the testimony of another witness. * * * Even when a witness does not literally state an opinion concerning the credibility of another witness, but his or her testimony would have the same 'substantive import,' such testimony is inadmissible." *Haslam*, 663 A.2d at 905. (citing *Tavares*, 590 A.2d at 870–71).

■ In the instant case, respondent contended that the trial justice erred in admitting into evidence the testimony of McAteer, who related that Jessica "came across as very credible" during their December 1993 interview; the testimony of Superczynski, who testified that, following his investigation of allegations of sexual abuse against the four children, he indicated the case for sexual abuse on the basis of "the statements of the children;" and the expert testimony of Ken-

ner, Jeffrey's therapist, who related Jeffrey's allegations of sexual abuse and testified that in her opinion Jeffrey would not implicate an innocent person.

■ On the basis of our holdings in *Haslam, Roderigues,* and *Tavares,* we are constrained to conclude that the testimony at issue constituted impermissible vouching by the witnesses on the issue of the children's credibility. Such testimony would clearly be inadmissible in a jury trial. The case before us, however, entailed a nonjury, civil trial. This Court has held that a trial justice sitting without a jury in a civil trial is presumed to be "sufficiently capable in terms of training and experience to take into consideration only those portions of the [testimony] that would be reliable and probative of the issues" relating to the children. *In re Stephanie,* 660 A.2d 260, 261 (R.I.1995). Accordingly, we hold that the trial justice in the instant case assessed and considered the appropriate evidence in reaching her determination. Consequently, respondent was not prejudiced by the admission of the statements.

### Qualification and Testimony of Witness Tovar

Last, respondent contended that the trial justice erred by qualifying Yomaira Tovar (Tovar) as an expert witness in clinical social work and by permitting Tovar to testify about statements that Heather had made to her in counseling sessions. Tovar was Heather's counselor at St. Mary's Shepherd Program from September 1993 until April 1994, during which time Tovar worked as a student-intern in the program while completing her master's degree in social work. At trial, the trial justice specifically stated that she was "not prepared to have [Tovar] qualified as an expert" but determined, rather, that Tovar could "testify as to what she did while she was at the Shepherd Program and [in respect to] her clients in this particular case." After DCYF assured the court that Tovar would not offer an opinion about whether Heather had been sexually abused, the trial justice then qualified Tovar as a "clinical social worker." The trial justice did not qualify Tovar as an expert witness on sexual abuse but, instead, qualified her as a

clinical social worker who, although permitted to testify about her sessions with Heather, was not permitted to offer an expert opinion about whether Heather had been sexually abused. Consequently, the trial justice did not err in so qualifying Tovar.

The respondent also argued that the trial justice erred in admitting Tovar's testimony about hearsay statements made by Heather during counseling sessions. The respondent asserted that these statements were improperly admitted under Rule 803(4) of the Rhode Island Rules of Evidence as a medical-diagnosis exception to the hearsay rule because Tovar was not qualified to make a medical diagnosis.

■ Under Rule 803(4), "[s]tatements made for purposes of medical diagnosis or treatment" are admissible. Admissibility, however, "hinge[s] on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of [the patient's] ailment." *State v. Ucero,* 450 A.2d 809, 815 (R.I.1982) (quoting *State v. Contreras,* 105 R.I. 523, 534–35, 253 A.2d 612, 619 (1969)). "The statements do not have to be made to a physician but could be made to any person, such as a hospital attendant, ambulance driver, or even a family member, provided they are made for the purpose of diagnosis or treatment." Advisory Committee's Note to Rule 803 at 1165.

■ In her capacity as Heather's therapist, Tovar was charged with assessing Heather's need for treatment. In *In re Jean Marie W.,* 559 A.2d at 630, this Court held that statements made by a child to a registered, independent clinical social worker were properly admitted because the statements were reasonably pertinent to her formulation of a diagnosis. In this case, the statements to Tovar were helpful in determining whether Heather had been sexually abused and in assessing her treatment needs, and therefore, the testimony was properly admitted under Rule 803(4).

■ The respondent last argued that the hearsay statements in which Heather identified respondent as a perpetrator or an aider and abettor in the alleged sexual abuse were improperly admitted because the statements were not pertinent to diagnosis and treatment but, rather, tended to fix fault on a

party in interest. We have held that "[i]f the declarations are simply a narration of details that have *no medical connection to diagnosis or treatment,* then the statements do not fall within the [medical-diagnosis] exception to the hearsay rule and are therefore inadmissible." *Ucero,* 450 A.2d at 815. (Emphasis added.) In *Ucero,* we held that a physician's testimony, related to the doctor by the complaining witnesses, detailing alleged incidents of sexual assault by the defendant on two young victims, was admissible because it was pertinent to diagnosis and treatment. *Id.* It is our conclusion that in the circumstances of this case statements made by Heather to her therapist were pertinent and helpful in Tovar's assessment of Heather's treatment needs. Consequently, the statements were admissible as an exception to the hearsay rule, pursuant to Rule 803(4).

## Conclusion

This case was clearly one in which the facts trumped the evidentiary errors. Ample competent evidence in the record supported a finding that the respondent was unable to care for her children properly, had sexually abused her sons, and was unable to protect her daughters from the risk of sexual abuse. Therefore, the trial justice neither overlooked nor misconceived material evidence, nor was she clearly wrong in finding that the children in this case were neglected and sexually abused in regard to the respondent.

Consequently, we deny and dismiss the respondent's appeal and affirm the decree of the Family Court, to which we return the papers in this case.