In re ROCCO W.

No. 96–601–Appeal.

Supreme Court of Rhode Island.

Jan. 13, 1998.

Anthony E. Angeli, Jr., Thomas J. Corrigan, Jr., Providence, Frank P. Iacono, for Plaintiff.

Orlando Andreoni, East Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent, Rocco Arrico (Arrico), appeals from a Family Court order committing his son, Rocco W. (Rocco) (date of birth, April 14, 1992), to the care, custody, and control of the Department of Children, Youth and Families (DCYF) based upon a finding of neglect. We ordered the parties to show cause why this appeal should not be decided summarily. After reviewing the parties' legal memoranda and considering their oral arguments, we conclude that no cause has been shown and that the appeal can be decided at this time.

The minor child, Rocco, first came to DCYF's attention on July 5, 1995, when a Roger Williams Hospital physician, one Dr. Medica, examined him for a fractured tibia and found cuts, welts, and bruises on his body. Doctor Medica reported the possibility of neglect to DCYF.[1] As a result of DCYF's involvement, Rocco's mother, Jamie W. (Jamie) underwent treatment for substance abuse and obtained parenting-skills counseling. Jamie admitted to child abuse because of her substance-abuse problem. Thus in a decree dated July 8, 1996, she was found to have neglected Rocco.

In January of 1995 Judy St. Angelo (St. Angelo), a clinical social worker at Cranston Community Action, evaluated Sean W. (Sean), Rocco's older half-sibling, for the possibility of sexual abuse. She testified that Sean had been referred to her for an evaluation by the social worker at his Coventry school. During the evaluation Sean disclosed to St. Angelo that he had been sexually abused by Arrico. As a result DCYF filed a petition alleging Arrico's neglect of Rocco based upon Arrico's alleged sexual abuse of

1. Rocco's half-sibling, Christina (date of birth, May 13, 1995), also came to the attention of DCYF at this time.

Sean. The Family Court conducted a hearing on DCYF's petition. At the hearing St. Angelo testified that Sean told her in January of 1995 that Arrico had molested him in the shower. She later testified that she did not know when this incident allegedly occurred. Jennifer Duarte (Duarte), a child-protective investigator for DCYF, testified that Sean also told her in January of 1995 that Arrico had molested him in the shower while he was living with his mother. Jamie testified that Arrico had never bathed Sean, he had never been alone with Sean, and that he "wouldn't do something like that." Elaine Arrico (the grandmother), Arrico's mother who lived downstairs from them at the time, testified that Arrico never bathed Rocco, never took him to the bathroom, never changed him, and never participated in any caretaking. Arrico also testified that he had never bathed or dressed either Sean or Rocco because he did not believe it to be his role or function to do so.

The evidence also showed that Arrico and Jamie lived together from July of 1991 until October of 1993. Sean lived with his mother, Jamie, until July of 1994, at which time he went to live with his biological father, Gary W. Also Arrico testified that the last time he saw Sean was in March of 1994, at Sean's birthday party. Thus after July of 1994 Sean ceased living with his mother, Jamie.

At the conclusion of the hearing, the trial justice ruled that he had a "great deal of difficulty" believing the testimony of Jamie, and "even a greater difficulty" believing that of Arrico and the grandmother. He decided:

"If the grandmother's story is true, these people were never alone. That she was there practically 24-hours a day. I believe, early in the morning and left early in the morning. And there was never an opportunity for her son [Arrico] to be with Shawn [sic]. And I cannot conceive of that situation.

"In any event, it would seem that just [Arrico's] conduct with Rocco is hands off with Rocco. The fact that he says, as far as Rocco's concerned, he buys him clothing when he thinks he needs it. He buys things when he thinks he needs it. But he really doesn't have anything to do with the child. He said he treated him pretty much as he treated Shawn [sic]."

The judge specifically found that Arrico's "hands off" conduct toward Rocco showed neglect.

On appeal Arrico argues that evidence of his alleged sexual abuse of Sean, introduced through the testimony of St. Angelo and Duarte, should not have been admitted because those statements do not comply with the requirements of G.L. 1956 § 14-1-69. He argues that (1) the statements were not made spontaneously within a reasonable time after the alleged acts occurred and (2) they were not made to someone Sean would have turned to for sympathy, protection, or advice.

Section 14-1-69 provides that a child's hearsay statements to a person about an act of abuse, neglect, or misconduct are admissible in any custody and/or termination trial in the court's discretion,

"if that statement was made spontaneously within a reasonable time after the act is alleged to have occurred, and if the statement was made to someone the child would normally turn to for sympathy, protection, or advice."

In enacting § 14-1-69, "the Legislature relaxed the standards of spontaneity and timeliness generally applicable to hearsay proffered under the excited-utterance exception to the hearsay rule (Rule 803(2))." *In re Ne-kia S.*, 566 A.2d 392, 395 (R.I.1989). The Legislature replaced the requirement that the declarant be " 'laboring under the stress of nervous excitement' with the requirement that the statement be 'made to someone the child would normally turn to for sympathy, protection, or advice.' " *Id.* at 395 (quoting *In re Deborah M.*, 544 A.2d 572, 574 (R.I. 1988)).

Here it appears that the trial justice was more concerned both with whether Sean trusted or felt safe with the women to whom he made these alleged disclosures and with Sean's age at the time than with the "made spontaneously" and "within a reasonable time" requirements. However, in *In re Jessica C.*, 690 A.2d 1357 (R.I.1997), we specifically discussed § 14-1-69's timeliness and spontaneity requirements. We decided that despite the relaxed admissibility standards under § 14-1-69, there are still limits to allowing such hearsay statements by children

into evidence. We concluded that these limits were exceeded in *In re Jessica C.* when the hearsay statements were allegedly made between two and twelve months after the children had made an initial disclosure of abuse or after they had been removed from their home. Although we declined to delineate any precise time limits for such statements to be admissible, we stated that "significant lapses of time, ample opportunity for reflection and deliberation, and numerous previous disclosures" suggested that the later hearsay statements were not made with spontaneity or at the child's first safe opportunity to disclose the alleged abuse. 690 A.2d at 1361.

 In the instant case Sean told St. Angelo and Duarte in January of 1995 that Arrico had allegedly sexually abused him. However, these statements occurred approximately six months after he had been removed from his mother's home and after he had begun living with his biological father. This delay—coupled with the child's having been removed for six months from the home where the alleged abuses occurred—indicates that these later statements were not made spontaneously within a reasonable time after the alleged abuse occurred. *See In re Jessica C.*, 690 A.2d at 1361. For example, it would appear that Sean would have had ample opportunity to make these disclosures to his biological father during the six months he lived with him and before he first met with St. Angelo or Duarte. Thus we hold that Sean's statements to the social worker and to the DCYF investigator fail to satisfy the requirement that they be made "spontaneously within a reasonable time after the act is alleged to have occurred." Accordingly they should not have been admitted into evidence under § 14–1–69.[2]

This case is also troubling because the trial justice seems to have grounded his finding of neglect primarily on the evidence and the admission by Arrico that he did not participate in Rocco's physical caretaking, such as bathing and feeding. But this reasoning appears to us to be a shaky foundation for a neglect determination because, by itself, such

a rule might condemn many otherwise fit parents whose division of child-care responsibilities is such that they are not the parent who is primarily responsible for meeting a child's physical needs. On the other hand Rocco's physical condition on July 5, 1995, including his fractured tibia, cuts, welts, and bruises, if unexplained, could well form the basis for a finding of neglect against Arrico.

 On appeal this court will not disturb the findings of a trial justice sitting without a jury unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *In re Jessica C.*, 690 A.2d at 1362. However, without all the hearsay evidence presented by St. Angelo and Duarte, clear and convincing evidence may not exist to support the trial justice's finding that Rocco was neglected by Arrico. Indeed, there is uncontradicted evidence that Arrico attended birthday parties, took the children to McDonalds, played with them, and provided clothes, food, and toys for them.

For these reasons, Arrico's appeal is sustained, the decree finding Rocco to be neglected is vacated, and the case is remanded to the Family Court for a new trial during which the Family Court is directed to consider, inter alia, whether Rocco's physical condition on July 5, 1995, is indicative of neglect by Arrico and whether all or any portion of Sean's statements to St. Angelo can be admitted into evidence under Rule 803(4) of the Rhode Island Rules of Evidence.

---

**2.** However, some portion of or all the statements allegedly made by Sean to St. Angelo may have been admissible under R.I. Rule of Evid. 803(4) as a statement made for the purposes of medical

diagnosis or treatment. The trial justice never considered the applicability of this rule, however, and it was never called to his attention.