## In re EPHRAIM L. et al.

### No. 2002–716–Appeal.

Supreme Court of Rhode Island.

Dec. 20, 2004.

Frank P. Iacono, Jr., for CASA.

Thomas J. Corrigan, Jr., for DCYF.

Linda Logan, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

## OPINION

PER CURIAM.

This case involves a clash between a mother's right to raise her children according to her religious beliefs and the state's interest, as *parens patriae,* to ensure that those children's basic needs are met so that they someday may blossom into sterling citizens. The respondent, Linda A. Logan (Logan or respondent), appeals from the Family Court's finding that her children, Ephraim and Theodora Logan,[1] were "dependent" on the court for protection and assistance, as well as its orders placing the children in the custody of the Department of Children, Youth and Families (DCYF or petitioner). In addition, Logan argues that these orders violate her First Amendment right to the free exercise of religion under the United States Constitution.

This case came before the Supreme Court for oral argument on November 1, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Family Court.

### I

### Facts and Travel

On March 21, 2002, DCYF filed petitions in Family Court alleging that Ephraim and Theodora Logan were dependent and needed the court's protection and assistance.[2] The DCYF alleged that respon-

---

1. Ephraim was born on June 21, 1996. Theodora was born on December 8, 1997. At the time of trial they were six and four years old, respectively.

2. General Laws 1956 § 14-1-3(6) defines "dependent" in pertinent part as follows:
 "any child who requires the protection and assistance of the court when his or her

dent's mental health impaired her ability to properly care for her children.[3] A trial was held on September 25, 2002.

Kathy Spameni (Spameni), a caseworker for DCYF, testified that she was assigned to the Logan family beginning in July 2001. She observed "a lack of stimulation in the home" during her visits; there were no toys or books, and barely any furniture. Logan told Spameni that she allowed only the Bible in the home and did not allow contact with other children. Spameni testified that Logan told her the children did not have regular doctors' visits and were not routinely immunized because it was against her religious beliefs. According to Spameni, Logan also disclosed that she was receiving disability benefits relating to her mental health problems, which, among other diagnoses, included paranoid schizophrenia.[4] Logan later testified that she had not taken her prescribed medications on the day of the trial.

After Spameni prepared a case plan for the family, respondent refused to sign it and stopped providing access to the home and to the children. At that point, in March 2002, Spameni filed the dependency petitions with the Family Court. On April 11, 2002, the Family Court ordered the children into temporary DCYF custody. After another court order, dated July 11, 2002, the children were evaluated at Child-Safe, the Child Protection Program at Hasbro Children's Hospital.

After the evaluation, the clinic's Dr. Seth Asser (Dr. Asser) found that Ephraim and Theodora both suffered from language and social delays and lacked dental care, educational exposure, and immunizations. Doctor Asser found that Theodora needed hearing and vision screenings and noted that she suffered from emotional neglect. According to Dr. Asser's notes, Logan "stat[ed] that if illness or injury occurre[d], [she] will only allow for whatever her faith reveals to her to do, will not call 911 or go to hospital." In the same visit to the clinic, Logan told the interviewer that the children "do not need to be taught the A–B–C's or the 1–2–3's because they will only need things that are revealed to her, [being the mother,] as being needed in due time by her understanding of God's word." Logan told Dr. Asser that the children did not have playmates or see any relatives because no one was allowed into the home unless they themselves had "the spirit."

Because Dr. Asser concluded that both Ephraim and Theodora showed signs of neglect, he authorized seventy-two-hour holds on the children starting on July 15, 2002. That same day DCYF then placed them with their maternal grandparents. Doctor Asser also recommended that the children be evaluated at Rhode Island Hospital to determine what services they needed. The DCYF's subsequent case plan called for the children's involvement in school to determine whether special services were necessary for language delays; counseling at the Providence Center; updated immunizations; and continuing medical care. Spameni testified that after the

---

physical or mental health or welfare is harmed or threatened with harm due to the inability of the parent or guardian, through no fault of the parent or guardian, to provide the child with a minimum degree of care or proper supervision because of:

(i) The death or illness of a parent; or

(ii) The special medical, educational, or social service needs of the child which the parent is unable to provide."

3. The children's father admitted dependency at trial.

4. The record reveals that Logan has also been diagnosed with delusional disorder, major depression disorder-recurrent, severe adjustment disorder, anxiety, and depression psychotic features.

children were removed from respondent's household, Logan met with the children only twice before refusing to participate in further visitations.[5]

At trial, respondent declined the assistance of her guardian ad litem based on the fact that the guardian was an attorney. Logan testified that her religious beliefs prohibited her from being represented by an attorney. The respondent's testimony established that she based her beliefs and her lifestyle on her reading of the 1611 King James version of the Bible. Finally, Logan testified that she was meeting with a new psychiatrist on a monthly basis. Beyond her own testimony, she did not present any witnesses or additional evidence at trial.

After considering the testimony and exhibits, particularly the physician's reports, the trial justice concluded that:

"by clear and convincing evidence these children are in fact dependent in that the mother of these children has in effect certain medical and/or social service needs which render these children dependent as to her. Because of the mother's own needs at this time, she is unable to address the needs of the children."

For each child, the trial justice signed a form entitled "Dependent/Neglect/Abused" dated September 25, 2002. Logan appeals from the Family Court's determinations.[6]

## II

### The Dependency Ruling

 The respondent is proceeding *pro se* on appeal. "[Such] litigants are not entitled to greater rights than those represented by counsel." *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I.1987). Still, "[o]ur courts have often exhibited leniency and provided assistance to those litigants who have chosen to present their own cases." *O'Neil v. State*, 814 A.2d 366, 367 (R.I.2002) (mem.). On appeal, respondent argues that "my children don't seem to be dependent as the Family Court judge

5. In a letter to Spameni dated September 5, 2002, Logan wrote: "I Linda Logan, am writing to you, to let you know that, the goal of reunification is clearly, not up to you. [B]ut, it is truly, up to the Lord, Iesus Christ, from God. Our maker and creator. (Our life). God."

In a note left at Spameni's office, on September 10, 2002, Logan wrote: "I will not be visiting my kids anymore."

6. The forms signed by the trial justice are similar to the "Event Hearing Sheets" that the court used to track events in the case. Although the middle section says "Decree or Order" (under which there are check boxes), it probably does not constitute a proper "separate document" as required for judgments under Rule 58 of the Superior Court Rules of Civil Procedure. Nor would it suffice under Rule 58 of the Family Court Rules of Procedure for Domestic Relations, which is modeled on the civil rules. These are rules that this court has enforced with some stringency. *See Furtado v. Laferriere*, 839 A.2d 533, 535–

37 (R.I.2004) (discussing the requirement of a "separate final judgment").

However, there is no comparable rule in the Rules of Juvenile Proceedings, which govern dependency actions. In fact, Rule 33 of the Family Court Rules of Juvenile Proceedings states that "[i]f no procedure is prescribed by these Rules, or by Rules of practice or general orders adopted pursuant to the authority contained in this Rule, the court shall proceed in any lawful manner not inconsistent with these Rules or with any applicable statute." Nevertheless, it seems that the practice of the Family Court has been to embody a judge's dependency determination in an order or decree on a separate document, as made evident by an earlier dependency decree in the record, issued March 10, 1999. *On remand, the clerk of the Family Court should enter an appropriate judgment, nunc pro tunc.* Although we are reluctant to enforce a rule not technically on the books, we suggest that the interests of justice would be served by uniformity in our court system.

says." We interpret this as a challenge to the Family Court's dependency finding.

■ We consider respondent's claim according to our well-settled standard of review. The "Family Court's * * * findings are entitled to great weight and will not be disturbed absent a showing that the trial justice was clearly wrong or that material evidence was overlooked or misconceived." *In re Nicole B.*, 703 A.2d 612, 615 (R.I. 1997). We must search the record to determine whether legally competent evidence supports the trial justice's findings. *Id.*

■ As noted above, G.L. 1956 § 14–1–3(6) defines dependency to include "any child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed or threatened with harm due to the inability of the parent or guardian * * * to provide the child with a minimum degree of care or proper supervision because of * * * [the] illness of a parent * * *." "The state's role in protecting children may properly be preventive of harm as well as remedial." *In re Lester*, 417 A.2d 877, 881 (R.I.1980). Although the statute does not expressly say so, this Court has interpreted it to include medical care and the "basic necessities of life." *In re Robert S.*, 762 A.2d 1199, 1201 (R.I.2000).

■ The determination that "a child is abused, neglected, or dependent shall be made upon clear and convincing evidence." Rule 17(b) of the Family Court Rules of Juvenile Proceedings. "The court shall clearly state the facts upon which it bases such determination and its reasons therefor." *Id.* "Unless the state can prove by clear and convincing evidence that a child is actually suffering or is likely to suffer physical and/or emotional harm, there is no reason to disturb the basic security of a family relationship." *In re Lester*, 417 A.2d at 880 (quoting *In re Jonathan*, 415 A.2d 1036, 1039 (R.I.1980)).

Under the facts before us, in reviewing this case under the clearly erroneous standard, we cannot say that the trial justice erred in his dependency determination. The trial justice carefully reviewed the evidence presented at trial, including various evaluations of the children. The evidence in these evaluations included respondent's statements that her children do not need medical care, as well as her statement that the children need only be taught "things that are revealed to her" according to her understanding of the Bible.[7] The trial justice also noted the reports that the

7. We pause to discuss an issue raised by petitioner in a motion to amend its oral argument on the subject of school attendance. The petitioner aimed to correct its assertion that Logan failed to respond to the allegation that her older child, Ephraim, was required to attend school or follow an approved home-school plan. The statute to which petitioner points, G.L. 1956 § 16–19–1(a), requires that: "[e]very child who has completed or will have completed six (6) years of life on or before December 31 of any school year and has not completed sixteen (16) years of life shall regularly attend some public day school." The petitioner is mistaken, however, in that its motion relies on an erroneous birth date for Ephraim. The record, as well as testimony taken at trial, clearly established that Ephraim was six years old at the time of trial.

We need not address this issue, however, because the educational concerns in an allegation of dependency are more general than the compulsory education requirements of § 16–19–1. Dependency encompasses "[t]he special medical, educational, or social service needs of the child which the parent is unable to provide." Section 14–1–3(6)(ii). Accordingly, whether the children were old enough to trigger § 16–19–1, the trial court properly could concern itself with their educational needs—even where no formal education was required by law. This is particularly important in light of the findings that both children exhibited language and social delays.

children had no socialization, either with playmates or relatives.

The trial justice cited Dr. Asser's examination report discussing signs of neglect, as well as various problems exhibited by each child. Ephraim had language and social delays in development, as well as no dental care or immunizations. Theodora had similar language and social setbacks, no dental care, and no immunizations since at least 1999. She also exhibited emotional neglect. The trial justice also noted respondent's diagnosis of paranoid schizophrenia, the fact that she was in treatment for it, and that she was consulting with a new doctor.

Although the trial justice certainly was aware of respondent's religious beliefs, Logan's beliefs, in and of themselves, played no part in the decision. Rather, the decision rested on, and is fully supported by, evidence that Logan's own overarching "medical and/or social service needs" rendered her unable to meet her children's basic needs. Based on the evidence reviewed above, this Court will not disturb the trial justice's dependency finding.

## III

### Waiver

■ Citing the First Amendment to the United States Constitution and 42 U.S.C. § 1983, respondent next asserts that the Family Court's order impermissibly violates her right to free exercise of religion. Beyond respondent's explanations at trial that her conduct was motivated by various passages from scriptures, she made no express constitutional claims below. The DCYF argues that because Logan did not raise her constitutional issues at the trial, she should be barred under our "raise-or-waive" rule. We agree.

■ "An issue that has not been raised and articulated at trial is not prop-erly preserved for appellate review." *In re David G.*, 741 A.2d 863, 866 (R.I.1999). We have, however, recognized an exception for cases in which "basic constitutional rights are concerned." *Id.* (quoting *State v. Mastracchio*, 672 A.2d 438, 446 (R.I. 1996)). To fall within the exception "the error asserted must go beyond the level of harmless error, the record must be 'sufficient to permit a determination of the issue,' and counsel's failure to raise the issue must be premised upon 'a novel rule of law that counsel could not reasonably have known during the trial.'" *Id.* (quoting *State v. Donato*, 592 A.2d 140, 142 (R.I. 1991)). We have clarified that "when an intervening decision of this court or of the Supreme Court of the United States establishes a novel constitutional doctrine * * * failure to raise the issue at trial will not preclude our review." *State v. Burke*, 522 A.2d 725, 731 (R.I.1987).

No doubt, the religious motivation for the respondent's conduct was before the trial justice in the most general sense. Logan simply failed, however, to present the trial justice with any fairly "articulated" free exercise or § 1983 claims. Although the United States Supreme Court's Free Exercise jurisprudence may have been new to Logan as a *pro se* litigant without legal training, her claims are not "novel issues," and as such, they are waived. "The importance of the 'raise-or-waive' rule is not to be undervalued. Not only does the rule serve judicial economy by encouraging resolution of issues at the trial level, it also promotes fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised." *Burke*, 522 A.2d at 731.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Family Court. The

record in this case shall be remanded to the Family Court. The clerk of the Family Court should enter an appropriate separate final judgment, *nunc pro tunc*.

Justice SUTTELL did not participate.